**UNITED STATES, Appellee,**

v.

**Manuel R. MORENO, Staff Sergeant
U.S. Army, Appellant.**

No. 58,978.
CM 449190.

U.S. Court of Military Appeals.

Argued Dec. 3, 1991.

Decided Sept. 30, 1992.

For Appellant: *Captain Robert H. Pope* (argued); *Colonel John T. Edwards, Lieutenant Colonel Joel D. Miller, Captain Donald G. Curry, Jr., Captain Alfred H. Novotne* (on brief); *Lieutenant Colonel Russel S. Estey, Captain Timothy P. Riley, Captain Cynthia J. Rapp* (on second supplement); *Major Marion E. Winter* and *Captain Brian D. Bailey.*

For Appellee: *Major Joseph C. Swetnam* (argued); *Colonel Norman G. Cooper, Leiutenant Colonel Gary F. Roberson, Major Kathryn F. Forrester, Captain Mark E. Frye* (on brief); *Colonel Alfred F. Arquilla, Major Thomas E. Booth, Major Maria C. Fernandez* (on answer to second supplement); *Colonel Dayton M. Cramer, Leiutenant Colonel Daniel J. Dell'Orto, Lieutenant Colonel Joseph A. Russelburg, Captain John J. Carroll III.*

## Opinion of the Court

COX, Judge:

A general court-martial comprised of officer members convicted appellant of four specifications of sodomy with a child under the age of 16 and one specification of committing indecent acts with a child under the age of 16, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The members sentenced appellant to a bad-conduct discharge and confinement for 1 year. The convening authority approved the sentence, and on initial review, the Court of Military Review affirmed. 25 MJ 523 (1987).

We granted review of these issues:

### I

WHETHER APPELLANT'S CONFESSION WAS TAKEN IN VIOLATION OF THE SIXTH AMENDMENT TO THE CONSTITUTION, MIL.R.EVID. 305(d)(1)(B), AND *MICHIGAN V. JACKSON*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

### II

WHETHER APPELLANT'S CONFESSION WAS TAKEN IN VIOLATION OF ARTICLE 31, UCMJ, 10 USC § 831, AND THE FIFTH AMENDMENT TO THE CONSTITUTION.

### III

WHETHER WRITTEN AND VIDEOTAPED HEARSAY STATEMENTS WHICH DID NOT QUALIFY AS EXCEPTIONS UNDER MIL.R.EVID. 804(b)(5) WERE IMPROPERLY ADMIT-

TED, VIOLATING APPELLANT'S RIGHT TO CONFRONTATION UNDER THE SIXTH AMENDMENT TO THE CONSTITUTION.

## IV

WHETHER A HEARSAY STATEMENT WHICH DID NOT QUALIFY AS AN EXCEPTION UNDER MIL.R.EVID. 803(4) WAS IMPROPERLY ADMITTED.

The victim was appellant's stepson, S, 14 years old at the time of the court-martial. The first two granted issues relate to the admissibility of a statement made by appellant to Mrs. Patricia Cirks, a State of Texas Department of Human Services (DHS) investigator-social worker. The remaining issues relate to admissibility of several out-of-court statements made by S and his mother (appellant's wife). These statements were made variously to military police, a CID agent, Mrs. Cirks, and a civilian physician. The military judge received the foregoing statements in evidence over defense objection.

We conclude that several of these statements were erroneously received in evidence; however, other statements were properly received, so appellant was not prejudiced by receipt of the inadmissible evidence. Art. 59(a), UCMJ, 10 USC § 859(a).

## I

A rather substantial factual background is necessary to understand the issues. The essential facts were set forth by the Court of Military Review in its initial opinion as follows:

Appellant's wife, suspecting improper sexual acts by appellant and S, his 14–year–old stepson, caused the stepson to tell her of the sexual abuse. She reported the matter to the military police. Sworn statements were taken from appellant's wife, Mrs. Moreno, and S. The statement of S set forth his account of the sexual abuse. That evening appellant was apprehended, released to his commanding officer, and ordered to remain in the barracks. During the night appellant attempted suicide by a lethal drug overdose but was saved due to the diligence of unit members. Several days after the incident was reported S was interviewed by Ms. C[irks], an employee of the State of Texas Department of Human Services (DHS).[*] S repeated the allegations against appellant and described in detail how he had been sexually abused. During this interview S stated that appellant had told him to tell his Mom that he had "lied about everything" or the "state would take us all away." At the request of a Criminal Investigation Command (CID) agent this meeting with S was videotaped.

Subsequently, Ms. C[irks] had the installation Social Work Services schedule an appointment for her with appellant. Appellant asked and Ms. C[irks] agreed to change the place of the meeting off the installation to Ms. C[irk's] office. Ms. C[irks] did not talk to the CID agent or the prosecutor prior to this meeting. Appellant was not escorted to the meeting and was not in custody during the meeting. At the meeting, Ms. C[irks] introduced herself as an employee of the Texas DHS and informed appellant that she needed to talk with him about S's allegations of sexual abuse. Appellant confessed to sexually abusing S. It is noted that prior to this interview the CID investigation had been closed and charges against the appellant preferred. It is also noted that Ms. C[irks] ultimately recommended no criminal trial but therapy and treatment for appellant and his family.

Although requested to appear as witnesses, Mrs. Moreno and S did not do so at the Article 32, (UCMJ) investigation. The stated reason for failure to appear was a family emergency in Arizona. At trial, after appellant was arraigned, the military judge ordered S be deposed based upon concerns that S would be unavailable at trial. On the morning of the deposition, a subpoena was served on S at school. While S was being prepared for the deposition at the Staff Judge

Advocate's office, Mrs. Moreno arrived. She appeared angry and hysterical and attempted to take S from the office. In the presence of S, she stated over and over again, that if S were deposed or testified, he would be sending appellant to jail and she did not want that to happen. Mrs. Moreno expressed concern over what would happen to her and her five children if appellant was sentenced to confinement. After several hours of discussion, Mrs. Moreno permitted S to be deposed. Appellant and counsel were present at the deposition. Counsel declined to question S regarding his prior statements of sexual abuse apparently because of appellant's concern for S's mental health. During the deposition, S recanted his statement to the CID agents and to Ms. C[irks]. S refused to answer when asked if he would appear at trial. S stated that he loved his father, that he did not want him to go to prison or to be thrown out of the military, and that therapy and treatment would be beneficial for his family.

At some time after the deposition, S told his brother that some of the statements he made concerning the sexual abuse by appellant were lies.

When subpoenas were served on Mrs. Moreno and S ordering their appearance at appellant's court-martial, Mrs. Moreno refused to sign for them. The subpoenas were left in her screen door. Subsequently Mrs. Moreno recanted her statement to the CID in a handwritten note that she left with defense counsel. Mrs. Moreno took S to Canada and did not appear at trial. At trial the military judge ruled that Mrs. Moreno and S were unavailable to testify. Over defense objection, he admitted their sworn statements to the CID and the video tape interview by Ms. C[irks] of S. He also admitted, over defense objection, appellant's confession to Ms. C[irks].

---

*Fort Bliss, the installation to which appellant was assigned, has an agreement with local civil authorities permitting the Texas Department of Human Services to investigate child abuse cases.

25 MJ at 524–25.

Regarding appellant's confession to Mrs. Cirks, the Court of Military Review, like the military judge, concluded that her investigation was sufficiently separate from the military's so that she was not obligated to advise appellant of his rights under Article 31, UCMJ, 10 USC § 831. *See* Mil. R.Evid. 305(d)(1)(B), Manual for Courts-Martial, United States, 1984, quoted *infra* at 113.[1] In addition, like the military judge, the court below concluded that Mrs. Cirks was not required to advise appellant of his Fifth Amendment rights (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) since she was not a law enforcement agent and appellant was not in custody at the time of the interview. 25 MJ at 525–26.

On appeal to this Court, we granted review of the four issues set out above. Before resolving them, however, we remanded for a fuller evidentiary hearing into the circumstances of appellant's confession. We noted that the

> interview of appellant occurred after he had been arrested by military police and asserted his right to counsel; after military charges had been preferred against him; and after military counsel had been assigned to him.

We ordered

> a factfinding hearing ... to determine the extent of this attorney-client relationship and whether appellant properly waived his Sixth–Amendment right to counsel prior to this interview.

28 MJ 152, 153 (1989) (footnote omitted). *See United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).

Such a hearing was duly convened, and the military judge entered the following findings:

> She also explained that she was subject to court subpoena regarding anything said between them, but that a recommendation from her agency regarding *probation* (*i.e.*, after a guilty plea) was often influential.

---

1. At the interview, Mrs. Cirks introduced herself and explain[ed] that ... [she] worked for the Department of Human Services, and that ... [her] job was to investigate reports of child abuse, and, if possible, to provide services for the family.

(1) Staff Sergeant Moreno established a full attorney-client relationship with both Captain Evans and Captain Bailey well in advance of any conversation regarding the 21 February interview of Ms. Cirks and SSG Moreno, and,

(2) That the evidence does not establish by a preponderance that Captain Evans or SSG Moreno made a proper lawful waiver of SSG Moreno's Sixth Amendment right to counsel prior to or during this interview.

31 MJ 935, 937 (ACMR 1990).

Upon further review, a majority of the Court of Military Review again found "that under the circumstances of this case, Ms. Cirks was not an agent of law enforcement personnel when she took the statement." *Id.* at 939. Therefore, the majority concluded that Mrs. Cirks had no duty to advise appellant of his rights; and thus his Sixth Amendment rights were not violated. 31 MJ at 937–39, *citing, inter alia, Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

In addition, the majority concluded beyond a reasonable doubt (31 MJ at 939) that, even if Mrs. Cirks was an agent of the police, admission of the statement did not prejudice appellant in view of the other evidence adduced against him.[2]

Before reaching these conclusions, the majority entered these additional findings of fact [Art. 66(c), UCMJ, 10 USC § 866(c)]:

That there was a Memorandum of Agreement between the Texas Department of Health Services and Fort Bliss, Texas, to provide social work services to Fort Bliss in child abuse cases;

That Ms. Cirks had an independent duty to interview appellant under Texas law;

That Ms. Cirks interviewed appellant acting on her own and not at the request of military law enforcement personnel or the prosecutor;

That Ms. Cirks advised Captain Evans, one of appellant's defense counsel, of the impending interview; [**]

That Captain Evans told Ms. Cirks he would tell appellant to keep his appointment with her; [***]

That at the time of the interview, the CID investigation was closed;

That neither the CID nor the prosecution knew Ms. Cirks would interview SSG Moreno;

That Ms. Cirks advised appellant that she was subject to a subpoena by the courts;

That Ms. Cirks did not know until well after the interview that she would have to provide the information;

That Ms. Cirks objected to providing the information until told to do so by her supervisors;

That the prosecutors discovered from appellant's wife that appellant had made incriminating statements to Ms. Cirks;

That only after this discovery did the prosecutor request the information be provided;

That at the time of her interview the State of Texas did not consider a person in Ms. Cirks' position as a law enforcement agent; *See Paez v. State,* 681 S.W.2d 34 (Tex.Crim.App.1984); and

That Ms. Cirks did not consider herself a law enforcement agent but was primar-

---

2. Judge Varo, dissenting in part and concurring in part, believed that our remand, 28 MJ 152–53, signaled a determination by us that Mrs. Cirks was an agent of the United States for these purposes, removing that issue from the Court of Military Review. While we concede that our order was susceptible of that interpretation, this Court had not, in fact, reached any conclusion

in that regard. In any event, Judge Varo concluded, as a matter of fact, that such an agency relationship was established, with negative Fifth and Sixth Amendment implications for the prosecution's case. Judge Varo agreed with the majority, however, that receipt of the confession did not prejudice appellant. 31 MJ at 940.

ily concerned with the welfare of the child and keeping the family together.

[**] This evidence was presented by Ms. Cirk's testimony in the *DuBay* hearing. It is also found in her notes which are attached to the *DuBay* hearing record.

[***] *Id.*

31 MJ at 938–39 (footnote omitted).

We granted review of the 1990 decision on the same four issues we granted review of in 1988, but they were phrased in a slightly different way. 33 MJ 483 (1991).

## II

We first consider admissibility of appellant's confession under the Fifth Amendment to the United States Constitution (granted issue II). Like the military judge and the Court of Military Review, we conclude that Mrs. Cirks had no Fifth Amendment duty to warn appellant of the rights enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* warnings must be given prior to custodial interrogations; and, as found by the courts below, appellant was plainly not in custody when, unaccompanied, he drove to Mrs. Cirks' office and permitted himself to be interviewed by her.[3] *See Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

There is also under the Fifth Amendment a potential question of the voluntariness of appellant's statement to Mrs. Cirks. *See generally Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Especially in this family context, we can imagine circumstances involving threats, promises, or other inducements that would raise questions of the voluntariness of an accused's statements to a social worker or other similarly situated person. However, as this record makes clear and as the courts below found, Mrs. Cirks made no such improper threats, inducements, or promises.

Admittedly, appellant was faced with a choice. On the one hand, he was offered the opportunity of enlisting the aid and support of the Texas Department of Human Services in trying to keep his family together, in helping himself to overcome his personal problem, and in siding with him in the event of a criminal prosecution. On the other hand, as he well knew, by cooperating with DHS he risked the possibility that his statements would be discovered by prosecutorial forces and used against him at a trial. If he did not cooperate with DHS, however, the risk of losing his children was presumably increased and the risk of criminal prosecution remained— without the benefit of significant DHS influence.

It was something of a dilemma to be sure, but it was a dilemma of his own causing. When people abuse children in this society, two distinct processes are triggered. One is the criminal process, which focuses on the proper way to deal with the perpetrator. The other is the child-protective process, which focuses on the preservation of and best interests of the child-victim. In appellant's case, both of these processes were well set in motion by the information initially reported to the authorities. Each of these processes was going to play itself out, one way or another, whether appellant wanted it and whether he took affirmative steps to affect the processes. In effect, Mrs. Cirks merely apprised appellant where he stood in the great flow of things, and, obviously in the best of faith, she offered him a very plausible scenario that might improve his personal and family prospects. Certainly, the evidence of this record is overwhelming that nothing was said or done by Mrs. Cirks to make appellant's statements involuntary.

---

**3.** In addition, the *Miranda* warning requirement is normally imposed only on law enforcement officials. *See generally United States v. Lonetree,* 35 MJ 396, 402 (CMA 1992), *cert. denied,* —— U.S. ——, ·113 S.Ct. 1813, 123 L.Ed.2d 444 (1993). We note, however, that in *Mathis v.* *United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), the Supreme Court applied the *Miranda* requirement to an IRS agent, and in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), to a court-appointed psychiatrist. *See* Part IV, *infra.*

We conclude that the Fifth Amendment provides appellant no relief.

## III

■ We next consider appellant's rights under Article 31 (also granted issue II). These rights-warning requirements preceded the Fifth Amendment, *Miranda v. Arizona, supra,* warning requirements by many years and are broader in application. *See United States v. Ravenel,* 26 MJ 344, 349 (CMA 1988). In relevant part, Article 31 provides:

(b) *No person subject to this chapter* may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

\* \* \*

(d) No statement obtained from any person in violation of this article, *or through the use of coercion, unlawful influence, or unlawful inducement* may be received in evidence against him in a trial by court-martial.

(Emphasis added.)

■ Specifically, Article 31 contains no custodial limitation, and the obligation to provide warnings plainly extends to persons subject to the Uniform Code, other than law enforcement authorities. *See United States v. Gibson,* 3 USCMA 746, 752, 14 CMR 164, 170 (1954).

■ Furthermore, as well noted by the Court of Military Review:

Armed forces criminal investigators cannot evade the duties imposed by Article 31, UCMJ, by utilizing a person not subject to the code as an instrument for eliciting disclosures without warning. *United States v. Holder,* [10 USCMA 448,] 28 CMR 14 (1959); *United States v. Grisham,* [4 USCMA 694, 696,] 16 CMR 268, 270 (1954). *Article 31, UCMJ, extends to a civilian investigator in two*

*instances: (1) where the civilian and military investigations merge into an indivisible entity, and (2) when the civilian investigator acts in furtherance of any military investigation, or as an instrument of the military. United States v. Penn,* [18 USCMA 194, 199,] 39 CMR 194, 199 (1969).

25 MJ at 525 (emphasis added). *See also United States v. Quillen,* 27 MJ 312 (CMA 1988)(Art. 31 warning requirement applicable to civilian base-exchange detective).

■ Ancillary to Article 31, Mil.R.Evid. 305(d)(1) provides: When evidence of a testimonial or communicative nature within the meaning of the Fifth Amendment to the Constitution of the United States either is sought or is a reasonable consequence of an interrogation, an accused or a person suspected of an offense is entitled to consult with counsel as provided by paragraph (2) of this subdivision, to have such counsel present at the interrogation, and to be warned of these rights prior to the interrogation if—

(A) The interrogation is conducted by a person subject to the code who is required to give warnings under Article 31 and the accused or suspect is in custody, could reasonably believe himself or herself to be in custody, or is otherwise deprived of his or her freedom of action in any significant way; or

(B) The interrogation is conducted by a person subject to the code acting in a law enforcement capacity, *or an agent of such a person,* the interrogation is conducted subsequent to preferral of charges or the imposition of pretrial restraint under R.C.M. 304, and the interrogation concerns the offenses or matters that were the subject of the preferral of charges or were the cause of the imposition of pretrial restraint.

(Emphasis added.)

Thus the questions we must answer are:

(1) Was Mrs. Cirks a person "subject to" the Uniform Code of Military Justice? Art. 31(b).

(2) Did she obtain appellant's confession "through the use of coercion, unlawful influence, or unlawful inducement?" Art. 31((d).

(3) Did Mrs. Cirks' investigation and the military investigation "merge[ ] into an indivisible entity"? or did Mrs. Cirks "act[ ] in furtherance of ... [the] military investigation, or ... as an instrument of the military"? *United States v. Penn, supra.*

(4) Was she an "agent" of a "person subject to the code acting in a law enforcement capacity"? Mil.R.Evid. 305(d)(1)(B).

The first question can be answered in the negative. Plainly, Mrs. Cirks was not herself subject to the Uniform Code of Military Justice. Art. 2, UCMJ, 10 USC § 802. The answer to the second question is also no. *See* Part II, *supra.* The conclusions of the lower courts in this regard are amply supported by the evidence.

That leaves us with the question of whether Mrs. Cirks' investigation had "merged" with the military's or whether she had become a *de facto* military operative. To resolve these questions, we must review the sequence of events of this investigation and Mrs. Cirks' role in the case.

Our review of this record confirms that the factual recitation set forth by the Court of Military Review is fully supported by the evidence. The molestation offenses were first reported to military authorities by appellant's wife on February 3, 1986. Military law enforcement personnel immediately interviewed Mrs. Moreno and S and took sworn statements from them. Upon conclusion of these interviews, appellant was apprehended and informed that he was a suspect. He was advised of his rights under Article 31, and he was asked to make

a statement; but he declined and requested counsel. The interview was then terminated. He was subsequently released to his commanding officer and ordered to remain in the barracks; later that night he attempted suicide.

The next day, February 4, 1986, the Child Protective Services Division of the Texas Department of Human Services (DHS) was notified by military authorities of the abuse accusations; Mrs. Cirks was assigned the case. On February 5, Mrs. Cirks met with and interviewed Mrs. Moreno and all her children at Beaumont Army Medical Center, Fort Bliss, Texas. The interviews were arranged by Beaumont Social Work Services personnel, and CID agents observed. The CID agents wanted to videotape Mrs. Cirks' interviews of the children, and they showed her a copy of S's prior statement to CID. She agreed to have her interviews of the children videotaped.[4] In the videotaped interview, S gave an account of the events that was consistent with his earlier sworn statement to CID. The videotape was retained by CID agents, and Mrs. Cirks had no other contact with military law enforcement or prosecutorial authorities during the investigative phase of the case. Charges were preferred[5] against appellant on February 13, 1986, and he was officially notified of the charges by his commander the next day.

Mrs. Cirks' interview with appellant did not occur until February 21, 1986, at her office in El Paso, Texas. By this time, Mrs. Cirks had learned that the CID had closed out its investigation of appellant and "that the case had been turned over to the prosecutor's office." She arranged the interview through the Beaumont Social Work Services department at Fort Bliss, where she initially intended to conduct the inter-

4. In any event, she was obligated under Texas law (and, she assumed, under the protocol between Fort Bliss and DHS, *see infra* ) to cooperate with law enforcement authorities.

5. The record of trial proper does not contain a copy of the charge sheet. However, the record of the *DuBay* hearing (Vol. II of IX) contains the Charge Sheet from the trial record designat-

ed there as Appellate Exhibit I. The proper procedure would have been to leave the charge sheet in the trial record and insert a copy in the *DuBay* trial record. Exhibits should not be removed from the record of trial for any reason. If an exhibit is needed for another purpose, it should be copied and the copy used for that purpose.

view for appellant's convenience. When appellant contacted her and requested to do the interview at her office, she changed the location as requested. Mrs. Cirks did not in any way coordinate this meeting with military police or prosecutorial authorities or notify them that she intended to interview appellant.

Not considering herself a law enforcement officer or on a law enforcement mission, Mrs. Cirks did not preface the February 21 interview with any formal rights' advisement. She did describe to appellant her role in the matter and the "legal ramifications." In particular, she explained that she was subject to court subpoena and that she could be compelled to testify about the interview. *See* n. 1, *supra.* She also informed appellant that, if he were to make good progress in a rehabilitation program, her agency would most likely recommend probation (*i.e.,* following a plea of guilty) and that such a recommendation was usually influential. However, she conceded to appellant that she was not sure about the military's procedures.

As a "first step" in his recovery, Mrs. Cirks urged appellant to admit his conduct. She understood that appellant did not want the military authorities to learn of the content of their discussions, and until later subpoenaed, she made no report to them of the results of the meeting. It was apparently Mrs. Moreno, appellant's wife, who, before she turned against the Government, tipped off the authorities that appellant had admitted the sodomies to Mrs. Cirks.

The issue before us is whether, at the time Mrs. Cirks took appellant's confession, her investigation was "merged" with the military investigation or whether she was acting as an "agent" of the military investigators. We conclude in both respects that the answer is no.

First, before Mrs. Cirks conducted her interview of appellant, the military investigation was closed, and there was no communication or coordination between the two camps. Indeed, Mrs. Cirks was so far from acting as an agent of the military that the information had to be extracted from her by court process.

Second, from the very first interview with appellant, wherein he admitted sodomizing S, Mrs. Cirks appears to have remained in the mode of social worker. At that very first interview, she scheduled appellant to begin group counseling four days later. She then officially became his case worker, and she "worked with Mr. Moreno and his family during—well from February of '86 through—ongoing with Mr. Moreno until June of '86," at which point another case worker was assigned. As of the date of the *DuBay* hearing 3 years later, the Moreno family's case remained open and active in the El Paso DHS office.

Third, even though some information about the *victim* was shared early in the process, the record abundantly supports the conclusion that Mrs. Cirks was at all times operating in pursuit of her limited, state objectives, cooperating with military authorities only where necessary to effectuate her own goals. The happenstance that both investigations sprang from the same pattern of misconduct and that some information was shared does not ineluctably convert state officials into military agents or instrumentalities. *See United States v. Oakley,* 33 MJ 27, 31 (CMA 1991) (Everett, C.J.), *citing United States v. Jordan,* 29 MJ 177, 185–86 (CMA 1989); *vacated and remanded,* 498 U.S. 1009, 111 S.Ct. 575, 112 L.Ed.2d 580 (1990); *aff'd,* 35 MJ 856 (NMCMR 1992). There is, for example, no suggestion that the State of Texas detached Mrs. Cirks from its sovereign mission and assigned her to the United States Government for the purpose of furthering a military criminal investigation.

Indeed, under Texas law, DHS is independently required to investigate all reports of child abuse. § 34.05, Tex.Fam. Code Ann. (Vernon 1986). As Mrs. Cirks explained at the *DuBay* hearing:

My job with the department was to investigate instances of child abuse and neglect; specifically, I was dealing with child sexual abuse. Following the investigation I provided ongoing services with the families and helping them to try and

prevent the abuse, to reunite the families, if at all possible, and get the family engaged in services.

*See also* n. 1, *supra.*

Under Texas law and apparently under the so-called "protocol," Mrs. Cirks had a general duty to report all discoveries of child abuse to the relevant law enforcement officials. *See* § 34.05(a) and (e), Tex. Fam.Code Ann. That did not occur in this case, at least with respect to the military authorities, presumably because the military authorities discovered the charged abuse first. As Mrs. Cirks explained, in a case where an abuse outcry is initially discovered by DHS personnel, they are required to make an initial report to appropriate law enforcement authorities within 24 hours. If the police subsequently ask for follow-up information, such as the results of further investigation, interviews, confessions, etc., DHS is required to cooperate. In a case where DHS initially reports the outcry to law enforcement, Mrs. Cirks ordinarily assumes that law enforcement officials will follow-up and request the DHS file.

As noted, Fort Bliss, Texas, and the Texas DHS had entered into an agreement permitting DHS personnel to come on base and investigate claims of child abuse. Appellant relies heavily on the existence of this agreement, as memorialized in a "protocol," to support his contention that Mrs. Cirks was thereby an agent of the military and, thus, obligated to render Article 31 warnings.

Strangely, however, this "protocol" was not made a part of the record of trial. We would have expected the party advancing the agency position to have produced a copy of this document or to have at least requested the court-martial to order its production. Yet we are pointed to no place in the record of trial, and we have not encountered such a place, where the defense made this request.

Instead, the only description of the contents of this arrangement comes from Mrs.

Cirks' testimony. She, however, had never seen the document. While her indirect understanding of the arrangement may amount to some evidence of the contents, it is far from conclusive. The following testimony is representative of her involvement with the operation and details of it:

Q. [T.C.] Who was that referral from?

A. [Cirks] The referral came to us through Beaumont [William Beaumont Army Medical Center] Social Work Services.

Q. Why was it that Beaumont contacted this Texas agency; do you know?

A. It is an agreement and a written understanding between the Fort Bliss officials and the Department of Human Services that reports of child abuse will be investigated by DHS.

Q. Does it matter if the abuse happened on or off post; do you know?

A. As far as our department is concerned, no, it does not.

Q. So does that mean that you would investigate on-post offenses as well as off-post offenses?

A. Yes.

Q. Do you know why that is that the military involves the Texas Department?

A. Because we are a State agency and this is Federal jurisdiction,[6] there has to be an agreement between the two entities allowing us to conduct an investigation on post. As far as my knowledge, this agreement has been made mainly due to expertise factors.

Q. What type of persons are working at the Department of Human Services that would have expertise in this area?

A. It would not be so much the type of persons as that we are specialized in child abuse cases.

Q. To your knowledge, did the Social Work Services at William Beaumont remain involved in this case even after you and the Texas Department of Human Services became involved?

A. To my knowledge, yes, they did.

6. Mrs. Cirks' lay impression of jurisdiction is of no moment.

Q. Do you know to what extent that would have been?

A. No, I do not know that.

In the face of this evidentiary omission, we ordered Government appellate counsel to produce a copy of the "protocol," 36 MJ 211 (Aug. 27, 1992), and they have supplied us with a set of memoranda, one from Fort Bliss and one from the Texas DHS, purporting to express such an understanding. The term "protocol" does not appear on the face of the documents. We requested this from the government representatives inasmuch as it appeared most likely that they, if anybody, would have custody of such a document. We draw no ultimate conclusions as to the authenticity of these documents or to the meaning and effect of the terms expressed therein. It was our intention, if such document(s) appeared to have the potential to shed light on the question of agency, to remand the record to the Court of Military Review for a determination of the authenticity and effect of the document(s). Upon review of these documents for that limited purpose, however, it appears that they do not shed such light. (Possibly this explains why the defense, at trial, found it more useful to make broad representations about the effect of this arrangement rather than to request that the documents themselves be produced.) Therefore, we will resolve this case as though these documents were never brought to our attention.

On the basis only of Mrs. Cirks' tangential testimony in this regard, we cannot extrapolate as a matter of law that an agency relationship was created between DHS and Fort Bliss. The balance of her testimony and that of the other witnesses abundantly supports the findings of both the military judge and the Court of Military Review that Mrs. Cirks was not acting as a functionary of the military when, on February 21, 1986, she interviewed appellant.

In any event, it is probable that the existence or nonexistence of a "protocol" or memorandum of understanding between Fort Bliss and DHS made no difference. In either case, DHS had the lawful ability to investigate child abuse within Texas, including presumably Fort Bliss, and DHS representatives were subject to court-martial process.

Thus, on the pretext of this case, we decline to extend broadly the unique warning requirements of Article 31 to state operatives in the performance of state objectives. We note that

> one of the prime elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent.

3 Am Jur 2d, Agency § 2 at 510 (1986)(footnote omitted). However, this record is utterly devoid of indication that the Texas DHS had submitted itself, in the conduct of its state statutory responsibilities, to the control of Fort Bliss officials. To extend the reach of Article 31 to all civilian agencies having official interests in servicemembers or their conduct would be to create a vast statutory exclusionary rule that could never have been imagined by the drafters of Article 31.

At the same time, we hasten to point out that, had Mrs. Cirks been functioning as a mere conduit for military authorities or had there appeared to be some sort of tacit understanding designed to subvert the purposes of Article 31, we would have had little difficulty in reaching a very different conclusion. Our existing precedents are more than sufficient to cope with such arrangements without creating wholesale extensions of Article 31. *See United States v. Holder; United States v. Grisham; United States v. Penn,* all *supra, see* 36 MJ at 113. On this record, however, it appears that Mrs. Cirks' relationship *vis-a-vis* law enforcement was essentially the same as teachers or health care workers, though the nature of her work was such that she was likely to encounter child abuse more frequently than professionals in those fields.

Under the circumstances of this case, we hold that Mrs. Cirks had no obligation to advise appellant of his rights under Article 31 prior to interviewing him. It follows that his confession to her is not excludable on that basis.

## IV

Next, we consider whether appellant's statement to Mrs. Cirks was barred from evidence by the Sixth Amendment to the Constitution (granted issue I). We have held, using Sixth Amendment analysis, that an accused servicemember has counsel rights "at or after the time that adversary judicial proceedings have been initiated against him ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Wattenbarger*, 21 MJ 41, 43 (CMA 1985),[7] quoting *Kirby v. Illinois*, 406 U.S. 682, 688, 689, 92 S.Ct. 1877, 1881, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion). For purposes of resolving this appeal, we will assume that judicial proceedings had been initiated against appellant under military procedures by February 14, 1986—7 days before the Cirks' interview—when appellant's commander formally read the charges to him.

The content of Sixth Amendment counsel rights has been stated as follows:

> [I]f *police* initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that *police-initiated* interrogation is invalid.

*Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986) (emphasis added). *See also Patterson v. Illinois*, 487 U.S. 285, 290–92, 108 S.Ct. 2389, 2393–94, 101 L.Ed.2d 261 (1988); *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *cf. Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68

L.Ed.2d 378 (1981).[8] It is undisputed that appellant asserted his right to counsel to CID agents before the Cirks' interview, and we accept the conclusion of the military judge at the *DuBay* hearing that appellant's Sixth Amendment counsel rights were not waived. Nevertheless, like the Court of Military Review, 31 MJ at 937–39, we conclude that the Sixth Amendment provides appellant no relief.

 The Sixth Amendment does not preclude all people from communicating with criminal defendants who have invoked their right to counsel after the adversarial process has begun. Rather, it is "the prosecutorial forces of organized society" and their minions who are barred from initiating contact at that point. *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984), quoting *Kirby v. Illinois, supra* 406 U.S. at 689, 92 S.Ct. at 1882; *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Thus, as appellant impliedly concedes in his brief,[9] Mrs. Cirks' having the status as a law enforcement functionary *vel non* is critical to resolution of the Sixth Amendment issue. We turn to that matter now.

We are aware of no case decided under the Sixth Amendment that addresses the question of whether child-protective investigators-social workers are part of "the prosecutorial forces of organized society." The Texas courts, however, have had occasion to address whether, under the Fifth Amendment, such officials are sufficiently connected with law enforcement so as to be required to advise suspects of their rights under *Miranda v. Arizona, supra,* and

---

7. *Cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986).

8. The only exception we have found to the law enforcement limitation of the Sixth Amendment interrogation restrictions, while perhaps no exception at all, is the *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), scenario. There a psychiatrist was appointed by the court in a capital case to interview Smith for the purpose of assessing his future dangerousness, which was a predicate to imposition of the death penalty in Texas. The psychiatrist interviewed Smith without warning him of his rights or notifying counsel, and he used the interview

as a basis to predict that Smith would "continue his previous behavior." Like the law enforcement restriction, the Supreme Court struck this testimony as violative of Smith's Sixth Amendment right to counsel.

9. "Therefore, the only remaining link needed to establish that .... appellant's ... Sixth Amendment rights were violated is the fact that Mrs. Cirks was an agent of the police for interrogation purposes when she interviewed appellant and obtained a confession." Supplement after remand at 12.

Texas' statutory warning requirements. Appellant relies on these cases for the proposition that, under the law of Texas, Mrs. Cirks was a law enforcement official. We think appellant misreads the cases.

It appears that, at the time of appellant's court-martial, *Paez v. State*, 681 S.W.2d 34 (Tex.Cr.App.1984), was the leading Texas case on the subject. Paez was charged with murdering her husband, and she herself was hospitalized as a result of the fatal incident. A Texas Department of Human Resources (DHR)[10] official, Patricia Vera, who "worked in protective services dealing with child abuse and child neglect," *id.* at 35, went to the hospital to talk to Paez. Paez was being maintained in "a security room," with "two uniformed policewomen in the ... room." *Id.* at 36. Vera had been working with the family for some months and was concerned about the well-being of the couple's minor children. During their conversation, Paez apparently made an incriminating statement; the issue at bar was admissibility of this statement.

Ultimately, the *Paez* court resolved the case on the ground that the "statements to Vera did not stem from custodial interrogation...." *Id.* at 38. Before reaching that conclusion, however, the court announced this fact-specific standard regarding application of *Miranda* to non-law enforcement personnel:

As the Court of Appeals correctly recognized, Vera's employment with the Department of Human Resources, while making her an agent of the "*State*," does not automatically make her an agent of the "*State*," as we used that term in *McCrory* [*v. State*, 643 S.W.2d 725 (Tex. Cr.App.1982)], meaning law enforcement and prosecution personnel. *Rhode Island v. Innis*, ... [446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)], makes it clear that the term "custodial interrogation" encompasses only *police* practices. The police practice established in *McCrory* was the use of non-law enforce-

ment personnel to accomplish what the police could not have lawfully accomplished themselves.... As the Court of Appeals correctly discerned, a state employee must be acting as an agent of law enforcement pursuant to a police practice before the safeguards attendant to custodial interrogation come into play. Only under those circumstances do non-law enforcement personnel become agents of the *State* for purposes of distinguishing custodial interrogation from non-custodial interrogation.

681 S.W.2d at 37.

Three years after appellant's court-martial, the Texas court reconfirmed its fact-specific *Paez* analysis in *Cates v. State*, 776 S.W.2d 170 (Tex.Cr.App.1989). The *Cates* court took pains to contrast the non-law enforcement mode of Ms. Vera in *Paez* with the overt law enforcement mode of Joanna Vatsis, an investigator with the Texas DHR. Cates "was the central figure in a criminal investigation concerning child abuse," and his arrest and confinement in the Dallas County Jail in part "resulted from information provided by Vatsis." Moreover, Cates "had been in jail five days on child abuse charges at the time Vatsis spoke with him and the questions propounded to him were calculated to evoke incriminating responses relevant to the pending charges." Under the circumstances, the court concluded that Vatsis was "acting as an agent of law enforcement." *Id.* at 173.

As the *Cates* court termed it:

Essential to our conclusion is the fact that Vatsis was not simply conducting a routine interview to assist her in solving the abuse problem within the family unit. Rather, it is evident that she was conducting a criminal investigation and officially operating to assist those police agencies responsible for enforcing the State's criminal laws. Vatsis was representing the State of Texas, the party in interest in a criminal prosecution. *This is evident as the record indicates that*

10. The Department of Human Services (DHS) succeeded the Department of Human Resources (DHR) in September 1985.

*after the interrogation of appellant she immediately reported his statements to law enforcement personnel.*

*Id.* at 174 (emphasis added). Under the circumstances, the court concluded that *Miranda* warnings were a prerequisite to admissibility of Cates' statements.

The cases following *Cates* continue to focus on whether the ordinarily non-law enforcement person was nevertheless functioning as a part of the "prosecution team." *O'Rarden v. State*, 777 S.W.2d 455, 458 (Tex.App.—Dallas 1989); *see also Cantu v. State*, 817 S.W.2d 74 (Tex.Cr.App.1991); *Henson v. State*, 794 S.W.2d 385 (Tex. App.—Dallas 1990); *Perkins v. State*, 779 S.W.2d 918 (Tex.App.—Dallas 1989).

This Fifth Amendment analysis crafted by the Texas courts seems to work equally well in the Sixth Amendment context. If a child abuse investigator-social worker or other non-law enforcement official is not serving the "prosecution team," it logically follows that such person is not a member of the "prosecutorial forces of organized society" and thus is not barred from contacting an accused, especially one not in custody, whose Sixth Amendment rights may have ripened. *See Patterson v. Illinois; Michigan v. Jackson; Maine v. Moulton; United States v. Gouveia; Edwards v. Arizona; United States v. Henry*, all *supra*, 36 MJ at 118. Until higher authority decides to the contrary, we will assume this to be the law today.

It follows from our discussion of Part III, *supra*, that this record does not support the conclusion that Mrs. Cirks was a member of the "prosecution team." Accordingly, we conclude that appellant's confession to Mrs. Cirks was not barred by the Sixth Amendment.

### V

■ At this point in our analysis, we pass over granted issue III for the moment and consider granted issue IV, the "medical hearsay" exception, Mil.R.Evid. 803(4). The defense moved *in limine* to suppress the testimony of Dr. Jaime Quintanilla. A hearing was conducted regarding admissibility of the doctor's testimony, and the military judge ruled it admissible. On the merits, the parties stipulated to his expected testimony as follows:

I am Doctor Jaime Quintanilla. I am the Medical Director and Staff Psychiatrist for Charter Hospital of Santa Teresa, New Mexico. As a psychiatrist, I treated [S] during his three week stay at Santa Teresa Hospital. He was admitted on approximately March 18th, 1986, for threatening to commit suicide. [S] was suffering from severe depression. During the course of my treating [S] for his depression, he stated that one of the major contributing factors was the sexual activity which he and his father had been engaged in for a number of years. [S] stated that this sexual activity would take place when his mother was away or asleep in bed. His father would have [S] play with his penis and then the father would fondle [S's] penis. [S] was fourteen years old at the time that I treated him.

The foundational requirements of medical purpose and knowledge on the part of the declarant are self-evident and were separately established at the *in limine* session. Moreover, the constitutionality of the evidence seems clear. *White v. Illinois*, — U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). We conclude that the stipulation of testimony of Dr. Quintanilla was properly received in evidence.

### VI

■ Returning then to granted issue III, we agree with the Court of Military Review that the videotape of S's statement to Mrs. Cirks and the statements of S and Mrs. Moreno to law enforcement authorities are suspect. Part of the military judge's basis for concluding that these hearsay statements were sufficiently reliable so as to satisfy the Confrontation Clause, *see Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980), was that they were corroborated by each other and by other evidence. In that regard, the judge anticipated our own decisions in *United States v. Hines*, 23 MJ 125 (CMA 1986), and *United States v. Yeauger*,

27 MJ 199 (CMA 1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989).

However, as the Court of Military Review correctly points out (31 MJ at 939), that aspect of the *Hines* line of cases was effectively overruled by *Idaho v. Wright,* 497 U.S. 805, 822–23, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990). For purposes of resolving this case, we will assume that these foregoing evidentiary items were improperly received in evidence.[11]

The question remains whether appellant was prejudiced. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We conclude beyond a reasonable doubt that he was not. Left in evidence were, *inter alia,* appellant's confession to Mrs. Cirks, S's consistent statement to Dr. Quintanilla, and appellant's attempted suicide the night he was confronted with the accusations. The fact that S (and his mother) made essentially the same accusations on several other occasions added little to the weight of the accusation.

The decision of the United States Army Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE concur.

Judge WISS and Senior Judge EVERETT did not participate.

SULLIVAN, Chief Judge (dissenting):

Substantial constitutional error occurred in this case. *See Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Appellant's incriminating admissions were made in response to direct questioning by Mrs. Cirks, "a Child Protective Services Specialist" for the State of Texas Department of Human Services. This deliberate elicitation of incriminating statements occurred after his Sixth Amendment right to counsel had attached and without a proper waiver of that right. *See Michigan v. Harvey,* 494 U.S. 344, 349, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). *See also Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). Accordingly, I must respectfully dissent. *See Cates v. State,* 776 S.W.2d 170 (Tex.Cr.App.1989); *State v. Graves,* 60 N.J. 441, 291 A.2d 2 (1972).

Turning first to our prior decision in this case, I note that the majority opinion herein fails to fully note our earlier remand order. That order said:

No. 58978/AR. *U.S. v. Manuel R. Moreno.* CMR 449190. Upon consideration of the granted issues (26 MJ 207), we hold that Mil.R.Evid. 103 is no bar to our consideration of the first granted issue in this case. *Our review of the record establishes that [Mrs.] Cirks, a social worker for the Department of Human Services of the State of Texas, actively solicited appellant's confession and subsequently reported it to trial counsel pursuant to an agreement between the State and the local command authorities. See generally Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *United States v. Henry,* 447 U.S. 264, 273, 100 S.Ct. 2183, 2188, 65 L.Ed.2d 115 (1980); *cf. Kuhlmann v. Wilson,* 477 U.S. 436, 455–60, 106 S.Ct. 2616, 2628–31, 91 L.Ed.2d 364 (1986). Her interview of appellant occurred after he had been arrested by military police and asserted his right to counsel; after military charges had been preferred against him; and after military counsel had been assigned to him. *See Michigan v. Jackson,* 475 U.S. 625, 627,

---

**11.** The question whether persons such as Mrs. Moreno and S constituted "witness[es] against" appellant at the time of his court-martial, given their obvious switch of sides, may yet emerge as a pivotal question. *Compare White v. Illinois,* —— U.S. ——, 112 S.Ct. 736, 740–41, 116 L.Ed.2d 848 (1992), *with* —— U.S. at —— – ——, 112 S.Ct. at 744–48 (sep. op. of Thomas, J.). Arguably, an accused's refuge in a case such as this may be the Compulsory Process Clause of the Sixth Amendment, rather than the Confrontation Clause. *See generally* Westen, *Confrontation and Compulsory Process: A United Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567 (1978); *cf. United States v. Hines,* 23 MJ 125, 132–33 (CMA 1986).

106 S.Ct. 1404, 1406, 89 L.Ed.2d 631 (1986); *Maine v. Moulton*, 474 U.S. at 176, 106 S.Ct. at 488; *United States v. Henry, supra;* cf. *Patterson v. Illinois*, 487 U.S. 285, 297 n. 9, 108 S.Ct. 2389, 2397 n. 9, 101 L.Ed.2d 261 (1988). We conclude that a factfinding hearing is appropriate to determine the extent of this attorney-client relationship and whether appellant properly waived his Sixth–Amendment right to counsel prior to this interview. *See United States v. Wattenbarger*, 21 MJ 41 (CMA 1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986); *see generally Patterson v. Illinois*, 487 U.S. at 290 n. 3, 108 S.Ct. at 2392 n. 3. Accordingly, it is ordered that the decision of the United States Army Court of Military Review, 25 MJ 523, is set aside. The record of trial is returned to the Judge Advocate General of the Army for transmission to an officer exercising general court-martial jurisdiction for the factfinding hearing into the matters set forth above. Following such proceeding, Article 66, Uniform Code of Military Justice, 10 USC § 866, shall apply.

28 MJ 152 (1989) (emphasis added; footnote omitted).

This order clearly implies that Mrs. Cirks was an agent for law enforcement because of her state agency's agreement to seek out and report information concerning possible child abuse on base to military authorities. The fact that Mrs. Cirks was also required by state law to investigate child abuse and turn over "requested" information discovered to other law enforcement authorities logically supports, not under-

mines, our previous conclusion concerning her police function. Moreover, this legal conclusion (*United States v. York*, 933 F.2d 1343, 1358 (7th Cir.1991)) on police agency for Sixth Amendment purposes was decided in accordance with well-established federal case law. *See United States v. Johnson*, 954 F.2d 1015, 1019 (5th Cir.1992); *United States v. Taylor*, 800 F.2d 1012, 1015–16 (10th Cir.1986); *see also State v. Gosselin*, 131 N.H. 243, 552 A.2d 974, 976–78 (1988).

Turning next to the majority opinion, it holds *for Sixth Amendment purposes* that Mrs. Cirks was not "a member of the 'prosecution team.'" 36 MJ at 120. However, I note that appellant was interviewed by this state social worker as part of a child-abuse investigation initiated by the Criminal Investigation Command (CID). There was a working relationship between the CID and the state social worker's agency which included sharing information obtained from social-worker interviews.[1] Finally, Mrs. Cirks' duty as an employee of the Child Protective Services included investigation of reports of child-abuse cases for the purpose of protecting children and in the interest of law enforcement.[2] The bottom line is that Mrs. Cirks was not acting as a private citizen or as a disinterested state official but as a state crimes investigator cooperating with military law enforcement agents in accordance with state statutes and prearranged agreement. (See federal cases cited above.) *See Cates v. State, supra; State v. Helewa*, 223 N.J.Super. 40, 537 A.2d 1328 (A.D.1988). Cf. *United States v. Watson*, 894 F.2d 1345 (D.C.Cir. 1990). In view of the Court of Military Review's finding of no proper waiver of

---

1. The actual agreement between Fort Bliss officials and the Department of Human Services for the State of Texas was not admitted as evidence in this case. However, the existence of an agreement authorizing this state agency to investigate military child-sexual-abuse cases was uncontrovertedly established by the prosecution's own witness, the state "Child Protective Services Specialist," Mrs. Cirks. Moreover, it was also uncontrovertedly established that this agreement provided for close coordination with the CID including sharing information and taking other steps which would satisfy the CID investigatory needs.

2. Questions by Individual Defense Counsel:

 Q. As a result of those questions, you are mandated by law and by your own operating procedures that you must report an incident such as this within 24 hours to law enforcement agencies, don't you?
 A. Yes.
 Q. Okay. So, your role is twofold? One is to serve the interest of law enforcement; and, two, for the protection of the children; isn't that correct?
 A. I get—yes.
 IDC. Thank you. No further questions.

appellant's Sixth Amendment right to counsel prior to this interview, a Sixth Amendment constitutional violation clearly occurred. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). *Cf. Buchanan v. Kentucky*, 483 U.S. 402, 424–25, 107 S.Ct. 2906, 2918–19, 97 L.Ed.2d 336 (1987).

The majority opinion also predicates its Sixth Amendment holding on its earlier holding that, *for Article 31, UCMJ*, 10 USC § 831, *purposes* Mrs. Cirks did not become an agent or instrument of the military investigators. 36 MJ at 115–116, 117–118. It rests this conclusion in part on a case which was vacated and remanded by the Supreme Court. *United States v. Jordan*, 29 MJ 177 (CMA 1989), *vacated and remanded*, 498 U.S. 1009, 111 S.Ct. 575, 112 L.Ed.2d 580 (1990), *aff'd*, 35 MJ 856 (NMCMR 1992). In any event, such a conclusion does not resolve the Sixth Amendment question in this case because, even if Mrs. Cirks was not an instrument of the military, she still was a state police agent.

The other issues in this case need not be addressed. In view of the unique testimonial context of this case, I would find prejudice, reverse the Court of Military Review, and order a rehearing on this basis alone. *See generally Arizona v. Fulminante*, 499 U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).