UNITED STATES, Appellee

v.

Raymond GIBSON, Midshipman First Class, U.S. Navy, Appellant.

No. 93–0291.
CMR No. 92–0501.

U.S. Court of Military Appeals.

Argued Jan. 5, 1994.

Decided June 17, 1994.

For Appellant: *William M. Ferris* (argued); *Lieutenant David P. Sheldon*, JAGC, USNR.

For Appellee: *Lieutenant E. Henriques*, JAGC, USNR (argued); *Colonel T.G. Hess*, USMC, and *Commander S.A. Stallings*, JAGC, USN (on brief); *Lieutenant Richard J. Huber*, JAGC, USNR.

COX, Judge:

This is another in the line of cases in which the prosecution was compelled to prove the accused's guilt of the offenses without the affirmative testimony and cooperation of the alleged victim. *Cf. United States v. McGrath*, 39 MJ 158 (CMA 1994); *United States v. Moreno*, 36 MJ 107 (CMA 1992); *United States v. Arnold*, 25 MJ 129 (CMA 1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *United States v. Barror*, 23 MJ 370 (CMA 1987); *United States v. Hines*, 23 MJ 125 (CMA 1986). Of the five issues we granted for review, we discuss only one relating to the propriety of admission of certain government evidence impeaching the trial testimony of the alleged victim (Issue IV), and another relating to the military judge's instructions on the permissible use of the impeachment evidence (Issue V).[1]

1. On August 13 and 14, 1991, appellant was tried by a general court-martial composed of officer members. He was charged with two specifications of carnal knowledge, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. However he was convicted, contrary to. his pleas, of two specifications of the lesser-included offense of taking indecent liberties with a minor, in violation of Article 134, UCMJ, 10 USC § 934. He was sentenced to confinement for 1 year, total forfeitures, and dismissal from the naval service. The convening authority approved the sentence but deferred confinement until the conviction became final, and the Court of Military Review affirmed. 36 MJ 556, 561 (1992).

We granted review of these five issues:

I

WHETHER THERE IS ANY EVIDENCE OF ONE OF THE ESSENTIAL ELEMENTS OF THE OFFENSES OF WHICH APPELLANT WAS CONVICTED.

II

WHETHER APPELLANT'S CONVICTION CAN BE SUSTAINED IF THE ONLY EVIDENCE OF THE OFFENSES HE WAS FOUND GUILTY OF COMMITTING CONSISTS OF UNCORROBORATED ADMISSIONS OF APPELLANT.

A. WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION FOR A FINDING OF NOT GUILTY AT THE CLOSE OF THE GOVERNMENT'S CASE IN CHIEF AT TRIAL.

B. WHETHER THERE IS CORROBORATION OF THE ALLEGED ADMISSIONS BY APPELLANT TO THE OFFENSE OF WHICH HE WAS CONVICTED, *i.e.*, FONDLING THE ALLEGED VICTIM AND PLACING HIS HANDS UPON HER PRIVATE PARTS.

III

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING APPELLANT'S CHALLENGE FOR CAUSE AGAINST ONE OF THE MEMBERS OF THE COURT–MARTIAL.

IV

WHETHER THE MILITARY JUDGE COMMITTED REVERSIBLE ERROR IN PERMITTING THE MOTHER OF THE ALLEGED VICTIM TO TESTIFY AS TO PRIOR STATEMENTS MADE BY THE ALLEGED VICTIM, WHERE THE ALLEGED VICTIM ADMITTED, AT TRIAL, TO MAKING THOSE PRIOR STATEMENTS, BUT DENIED, WITH EXPLANATIONS, THE TRUTH OF THOSE PRIOR STATEMENTS.

V

WHETHER THE MILITARY JUDGE'S INSTRUCTIONS ON PRIOR STATEMENTS BY THE ALLEGED VICTIM CONSTITUTED REVERSIBLE ERROR.

*General Facts*

Viewed in the light most favorable to the prosecution, *cf. Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the following evidence was adduced at the court-martial: Appellant was a midshipman at the United States Naval Academy, and he participated in a "sponsorship" program, in which midshipmen are assigned to local families. The A family sponsored appellant, gave him keys to their home, and treated him as "a member" of their family for the 4 years he attended the Naval Academy. For most of appellant's 4–year relationship with the A family, he was like a brother to Cheri, the older of two daughters. However, during appellant's last year at the Naval Academy, when appellant spent a couple of weekends a month at the A's house, Mrs. A noticed a change in appellant's relationship with her daughter and was worried that the two had become "too close." Mrs. A told appellant she thought Cheri, who was 12 years old at the time and in the 7th grade, had "a crush" on him and asked him not "to lead her on." On one occasion, Mr. A found his daughter sitting on appellant's lap. On another, Mrs. A noticed that appellant and Cheri had been alone together in Cheri's room with the door closed. Mrs. A also was suspicious when she entered the family room late one night and Cheri jumped up from the floor where she had been sitting with appellant.

One day while cleaning Cheri's room, Mrs. A found a letter from Cheri to appellant confirming that the two had an intimate relationship. Mrs. A cried, spoke with Mr. A about the situation, then decided to call appellant, who was at home in Tennessee on leave before graduation. When Mrs. A asked appellant if he had been "intimate" with Cheri, he replied, "Sort of." And when pushed to be more precise, he described their acts as "[t]ouching. Maybe kissing. Maybe fondling or something." Mrs. A instructed appellant to tell his father what he had told her and to call her back.

Appellant, with his mother and father on the telephone at his home in Tennessee, returned Mrs. A's call. Mrs. A asked appellant for "the truth," and he told her that he had been "intimate" with Cheri twice, once about a month before and again two weeks after that.

When Cheri got home from school that day, her mother took her to the park to talk. Mrs. A confronted her daughter, saying she was aware Cheri had "had sex" with appellant. Cheri admitted having sex with appellant on two occasions, once in her bedroom and once in the basement. Cheri told her mother not to worry about the possibility of pregnancy because she had her period the first time and the second time appellant used a condom.

The same afternoon, Mrs. A took Cheri to Dr. Smith for a pelvic examination. Dr. Smith observed "two healed lesions" in Cheri's hymenal ring. The recent scars could have resulted from "intercourse," "trauma to the vaginal area," or from an attempt "to insert" something "into the vagina."

After being confronted telephonically by Mrs. A, appellant called Ensign Jason Jorgenson, his friend and former roommate, and told him he was in trouble and would not graduate because "he was being investigated for statutory rape" of Cheri. Appellant told Ensign Jorgenson, apparently referring to sex with Cheri, that it had "just kind of happened," and that it had happened twice. Appellant was "upset" and "contemplating suicide."

Cheri also told a number of her schoolmates that she had twice had sex with appellant, and she made a sworn, written state-

A. WHETHER SAID INSTRUCTIONS COMPLIED WITH THE MANDATES OF RULE 105 OF THE MILITARY RULES OF EVIDENCE.
B. WHETHER, BECAUSE THERE WERE NO PRIOR CONSISTENT STATEMENTS BY THE ALLEGED VICTIM AND THERE WAS NO CLAIM OF RECENT FABRICATION BY THE ALLEGED VICTIM RAISED BY APPELLANT, THEREFORE, THE PRIOR CONSISTENT STATEMENT INSTRUCTION SHOULD HAVE BEEN GIVEN.

ment to that effect to a Naval Investigative Service (NIS) agent.

At the investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832, testifying under oath, Cheri adopted her written statement, acknowledging its truthfulness and accuracy.

### The Evidentiary Status

At trial, Mrs. A described her observations of appellant and Cheri, her discovery of Cheri's letter, appellant's admissions to her, and (over defense objection based on hearsay) Cheri's admissions to her. She also opined that Cheri was "in love with" appellant. Ensign Jorgenson testified about appellant's admissions to him. Dr. Smith testified about his observations and conclusions.

Cheri was called as a prosecution witness. Apparently to no one's surprise, she now denied ever having sexual relations with appellant.[2] Over defense objection, however, she admitted having told three of her school friends and her mother that she and appellant had engaged in intercourse twice. Also over defense objection, she acknowledged that she made the sworn, written statement to the NIS agent and that she testified contrary to her trial testimony at the Article 32 investigation. She claimed to have lied about her relationship with appellant in each of these prior instances for a number of reasons, including the fact that she had been confused.[3] She maintained she was not telling the truth when she repeatedly said she had sex with appellant, but was now telling the truth in testifying she did not have sexual relations with appellant.

The prosecutor's approach was twofold: First, he wanted to introduce Cheri's Article 32 testimony and the pretrial statement she adopted therein as substantive prior-inconsistent-statement evidence. Mil.R.Evid. 801(d)(1)(A), Manual for Courts–Martial, United States, 1984, provides:

> A statement is not hearsay if: ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding. ...

Second, counsel wanted to introduce Cheri's other statements—those to her mother and school friends—to impeach her trial representation that sex did not occur. Mil.R.Evid. 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Though hardly a paradigm of clarity, this latter passage, drawn verbatim from its federal counterpart, is presumed to embody the ancient common law evidentiary precept that a prior inconsistent statement (albeit hearsay itself and not admissible to prove the truth of the matter asserted) may be received for the limited purpose of impeaching the inconsistent trial testimony of the declarant. *See* S. Saltzburg and M. Martin, 1 *Federal Rules of Evidence Manual* 715–26 (5th ed. 1990). *See also* Mil.R.Evid. 607 (permitting a party to impeach its own witness).

---

2. During his opening statement (before the commencement of the Government's case), civilian defense counsel signaled that Cheri might be singing a different tune. After Cheri balked on the stand, trial counsel, without skipping a beat, launched directly into his drive to introduce her out-of-court statements. *See* text, *infra*.

3. Cheri testified that she had told her mother she had sex with appellant, then later recanted.

> Q. Have you spoken to your mother about this?
> A. Yes, I have.

> Q. What have you stated to your mother about what you have said?
> A. I told her it happened.
> Q. You told your mother it happened?
> A. Yes, my mother.
> Q. Have you ever told your mother that it did not happen?
> A. Yes.
> Q. Now, have you ever told your mother that it's false?
> A. Yes. I didn't tell her the statement was false. I just told her that we didn't do nothing.

■ Notwithstanding the defense objection, the military judge permitted impeachment of Cheri's trial testimony by evidence of her inconsistent statements. Mil.R.Evid. 613(b). The judge did not, however, allow the prosecution to use substantively Cheri's prior written statement which she adopted at the Article 32 hearing. Mil.R.Evid. 801(d)(1)(A).[4]

Thus the evidentiary posture of the Government's case was as follows: The principal items of substantive evidence were appellant's alleged admissions to Mrs. A and Ensign Jorgenson, and the potentially corroborative medical testimony of Dr. Smith.[5]

4. As the verbatim record of Cheri's Article 32, UCMJ, 10 USC § 832, testimony reveals, she testified under oath at that hearing and was subjected to cross-examination by appellant's counsel. She identified her page-and-a-half typed, sworn, signed statement made to a Naval Investigative Service (NIS) agent. She attested that she was sure of the content of the document, that it "was true" to the best of her knowledge, and that it represented her testimony as of the day of the hearing.

At the court-martial, the Government proffered the Article 32 record and attempted to introduce the written statement under Mil.R.Evid. 801(d)(1)(A), Manual for Courts–Martial, United States, 1984. *See* text, *supra.* In sustaining the defense motion to suppress the evidence, the military judge explained:

> I don't find this statement prepared by NIS to fall under any of the exceptions to the hearsay rule. I don't find under [Mil.R.Evid.] 803(24) it to be convincing to me that it contains guarantees of trustworthiness. It appears to me that this was a statement prepared by NIS for the purposes of prosecution and that we are trying to boot-strap that statement, which was prepared by and typed out by NIS for the purposes of prosecution, giving the status of testimonial evidence, and I'm not going to allow it.
>
> \* \* \*
>
> I find that there is no guarantee of trustworthiness and to accept this into evidence I think would be violative of [Mil.R.Evid.] 403. I think in these proceedings it may be relative, but its probative value is outweighed by the danger of prejudice. I am not going to permit NIS to come in here and indirectly testify before this court through a statement they prepared.
>
> \* \* \*
>
> [To trial counsel] Well, to save you some time, why don't you just look at *United States v. Conner* at 27 MJ 378. In that case I believe the defense failed to object to the statements of the NIS, which were presented at the Article 32, and, therefore, the Court of Military Appeals admitted it. I think it is indicated that had objection been made at the Article 32 hearing it would have properly been excluded in the trial. Examine that case and then we can determine whether you are ready to proceed or not.

The correctness of the military judge's ruling suppressing this evidence is not before us. We note, however, that *Conner* did not involve a ruling under Mil.R.Evid. 801(d)(1)(A) (statements which are not hearsay), but under Mil.R.Evid. 804(b)(1) (hearsay exceptions—former testimony). Further, while *Conner* involved admissibility of a statement adopted by an informant at an Article 32 hearing, unlike the instant case the declarant in *Conner* was not available to the accused for cross-examination at the court-martial, being by then absent without leave. On the record before us, we reserve judgment whether *Conner* is broad enough to support the judge's *per se* rejection of adopted testimony.

Of concern to us is what followed the judge's suppression ruling. Trial counsel promptly invoked RCM 908, Manual, *supra,* for a delay to consider appealing the judge's ruling. That rule grants the Government a right to appeal a military judge's ruling "which excludes evidence that is substantial proof of a fact material in the proceedings." That the prior inconsistent statement qualified for government appeal is beyond dispute. In fact, that evidence was the *only* substantive bit of evidence obtainable from Cheri, *see* text *infra.* Absent that evidence, the Government was in the anomalous position of sponsoring a witness for the sole purpose of trying to mitigate her hostile testimony.

RCM 908(b)(1) further provides:

> After an order or ruling which may be subject to an appeal by the United States, *the court-martial may not proceed, except as to matters unaffected by the ruling or order, if the trial counsel requests a delay to determine whether to file notice of appeal under this rule.* Trial counsel is entitled to no more than 72 hours under this subsection.

(Emphasis added.) Notwithstanding RCM 908, the military judge refused to permit a delay and forced the court-martial to a conclusion on the basis of the remaining evidence. We can conceive of no justification for the military judge's disregard of the Government's right under RCM 908.

5. These statements were not necessarily conclusive in themselves. First, Mrs. A's testimony itself admitted of much ambiguity as to appellant's meaning. In addition, the nature of some of appellant's comments to Mrs. A was disputed by appellant's father, who was a party to one of the phone calls. Further, appellant had a second conversation with Ensign Jorgenson shortly after the first one. The reported tenor of that conver-

Cheri's own testimony, in theory, amounted to a complete nonentity. Though the prosecution called her as a witness (apparently in the good-faith belief that substantive prior inconsistent evidence could be produced), essentially all they could get out of her was a general denial. The impeachment evidence attacking her denial was theoretically barred from substantive use.

### The Extrinsic Evidence: Mrs. A's Account of Cheri's Statements

Cheri readily admitted on the stand that she had made a multitude of prior statements which were diametrically inconsistent with her trial testimony. The first granted issue presents only the narrow question of whether the judge erred in receiving *extrinsic* evidence ·(*i.e.*, Mrs. A's testimony) of Cheri's prior inconsistent statements.

■ When a witness admits having made prior inconsistent statements, the law imposes certain limits on admissibility of the collateral statements themselves. We addressed such a circumstance in *United States v. Button*, 34 MJ 139 (CMA 1992), where Button's stepdaughter told her mother, investigative agents, and a social worker that she had been abused. When the girl took the stand, however, she recanted her statements and claimed "that she had previously lied." We looked to federal precedent applying Fed. R.Evid. 613(b) [which "parallels" Mil.R.Evid. 613(b) ] for guidance:

> The Court of Military Review relied on *United States v. Soundingsides*, 820 F.2d 1232 (10th Cir.1987), in holding "that extrinsic evidence of a prior inconsistent statement should not be admitted for impeachment when (1) the declarant is available and testifies; (2) the declarant admits making the prior statement; and (3) the declarant acknowledges the specific inconsistencies between the prior statement and his or her in-court testimony." [*United States v. Button,*] 31 MJ [897] 903 [ (AFCMR 1990) ]. *See also United States v. Greer*, 806 F.2d 556 (5th Cir.1986). We agree.

> In adopting this interpretation of Mil. R.Evid. 613(b), we have considered that the "prevailing view" and "the more expedient practice" is to disallow extrinsic evidence of a prior inconsistent statement if the witness admits making the statement. *McCormick on Evidence* § 37 (E. Cleary 3d ed. 1984) . . . .

34 MJ at 140 (footnote omitted). *See also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1476 (11th Cir.1992).

■ While extrinsic evidence of the prior inconsistent statements is generally not admissible when the witness admits making the inconsistent statements, that evidence can be admissible where "the interests of justice otherwise require." Mil.R.Evid. 613(b). *See United States v. Button*, 34 MJ at 140 n. 2. Where justice requires admission of such extrinsic evidence, the evidence does not become substantive evidence, but may be considered for the sole purpose of impeaching the witness' testimony.

Here, Cheri's grudging admission to making prior inconsistent statements, in the abstract, arguably painted a misleading picture of the statements. *See* n. 3, *supra*. The statements were made in the context of a mother-daughter relationship. Mrs. A had discovered her daughter's letter to appellant and confronted her daughter with her suspicions that the two had been intimate. Cheri admitted having sex with appellant on two occasions, told her mother where it had occurred, and gave her two reasons not to worry about pregnancy. The specificity of the statements and the confidential relationship make these prior inconsistent statements powerful, such that the mere admission by Cheri on the witness stand that she had made different statements in the past would not accurately portray the content of her conversation with her mother.

We do not ultimately resolve the narrow question of the propriety of the receipt of this extrinsic evidence as our evaluation of the instructional issues raises even more fundamental problems.

---

sation was vastly different from that of the first one. At best, the medical evaluation of Cheri

showed her condition to be *consistent* with some form of penetration.

*Prior–Inconsistent–Statement Instruction*

■ Turning to the first aspect of the instructional issue, appellant's contention is that the instruction given was deficient in enforcing the mandate of Mil.R.Evid. 105. That rule provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the military judge, upon request, shall restrict the evidence to its proper scope and instruct the members accordingly.

In particular, appellant complains that the instruction given by the military judge did not sufficiently indicate to the members that *Mrs. A's* account of Cheri's statement was offered only for the limited purpose of impeaching Cheri's trial testimony, but that it could not be used as substantive evidence of appellant's guilt. The limiting instruction given by the judge was as follows:

> You have heard evidence that the alleged victim [C] made a statement prior to trial that may be inconsistent with her testimony at this trial. Specifically, that the prior statement indicated that sexual contact had occurred between her and the accused. Then you heard her indicate here under oath that those things did not occur. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the testimony of [C]. You may not, however, consider the prior statement as evidence of the truth of the matters contained in that prior statement.

Previously, the military judge had rejected the following proposed instruction drafted by defense counsel:

> Certain evidence has been received at this trial for the purpose of impeaching the Government's witness, [C]. That evidence consists of the testimony by her that she gave statements prior to today which are inconsistent with what she testified today to be the truth and the testimony by Mrs. [A] as to what her daughter said to her. That evidence was received for that limited purpose only. It is not substantive evidence *and must be disregarded by you in determining whether the accused is guilty of the charges against him.*

(Emphasis added.)

■ We agree that the judge's limited-use instruction might have been more explicit in several respects. However, it was minimally adequate and was, in any event, better than that proposed by the defense. In particular, the final clause of the defense proposal is grossly misleading, suggesting that an impeached witness' testimony must be judged on its face and that impeaching evidence must be disregarded. Suffice it to say, the weight given to Cheri's denial, while not a component of the Government's *prima facie* case, is very much a factor to be considered in determining whether appellant was guilty of the charges against him.

The military judge's rendition, on the other hand, incorrectly represented that Cheri had "made a statement prior to trial that may be inconsistent with her testimony at this trial" (emphasis added), where in fact she had made numerous inconsistent statements— hardly a ground of defense complaint. In addition, the judge might have made it clearer that the evidence being limited included not only Cheri's witness-stand acknowledgment of inconsistency, but also Mrs. A's account of Cheri's statements. Since the judge's instruction outlined at least the broad parameters of the limitation, however, we are confident that a sufficient blueprint was provided to reinforce counsels' argument as to the appropriate weight and use to be accorded the respective pieces of evidence. We deem the judge's somewhat superficial instruction to be among the least of our concerns about this court-martial. *See* n. 4, *supra,* and text, *infra.*

*Prior Consistent Statement Instruction*

■ For reasons apparent neither to us nor to the Court of Military Review, the military judge also gave, in accordance with trial counsel's urging and over defense objection, an instruction on Cheri's prior *consistent* statements. The instruction appears to have been based on Mil.R.Evid. 801(d)(1)(B), which provides:

A statement is not hearsay if: ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... *consistent with the declarant's testimony* and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....

(Emphasis added.) *Cf.* para. 7–11, *Military Judges' Benchbook* at 7–17 (Dept. of the Army Pamphlet 27–9 (1 May 1982)). The problem is, the statements the military judge referenced were not consistent—indeed they were completely inconsistent—with the declarant's testimony.

The Court of Military Review well described the scenario as follows:

The trouble started in an Article 39(a) session on instructions, when the trial counsel requested an instruction on prior consistent statement—recent fabrication (Record at 140), to which the appellant's civilian counsel promptly objected. Apparently, the trial counsel's theory was that, because [C] had made prior out-of-court statements which were consistent with each other, that proved that her in-court testimony which was inconsistent with her prior out-of-court statements was a recent fabrication. *That may be true, but it has no resemblance to the rule of evidence which the requested instruction is designed to implement, as the civilian counsel clearly explained on the record* (Record at 141).

The military judge took the matter under advisement and ultimately gave the following pair of instructions:

[*See* limiting instruction on prior inconsistent statements, *supra* ]

You also heard evidence that [C] made a statement prior to trial that may be *consistent with her testimony at this trial.* Specifically, that she told her friends and her mother that she had had these prior sexual contacts with the accused, just as she allegedly indicated to NIS that they had occurred. If you believe that such a consistent statement was made, you may consider it for its

tendency to refute the charge of recent fabrication or improper motives. *You may also consider the prior consistent statement as evidence of the truth of the matter expressed therein.*

(Record at 163.)

The second-quoted instruction, referring to non-specific inculpatory statements made by [C] to her friends and the inculpatory statements made by her to her mother, concerning which her mother was permitted to testify, makes no sense in the context of this case, *but its potential prejudice consists in placing before the members for their full consideration the prior inconsistent statements made by [C] to her friends and her mother, which had been entertained solely under M.R.E. [Mil.R.Evid.] 613.*

36 MJ at 559 (emphasis added).

■ Ultimately, the Court of Military Review concluded, however, that appellant was not prejudiced by the erroneous instruction, 36 MJ at 560–61, and that is where we part company with that court. In our view, this court-martial was D.O.A. even before it got to instructions.

As McCormick notes:

It has been widely held that the prosecution in a criminal case may not employ a prior inconsistent statement to impeach a witness it has called as a "mere subterfuge" or for the *"primary* purpose" of placing before the jury substantive evidence which is not otherwise admissible....

*McCormick on Evidence* § 38 at 129 (J. Strong 4th ed. 1992). McCormick quotes *United States v. Hogan,* 763 F.2d 697, 702 (5th Cir.1985), for this proposition:

Every circuit to consider this question has ruled similarly.... The danger in this procedure is obvious. The jury will hear the impeachment evidence, which is not otherwise admissible and is not substantive proof of guilt, but is likely to be received as such proof. The defendant thus risks being convicted on the basis of hearsay

evidence that should bear only on a witness's credibility. See also FRE 403, 404. *Id.* at n. 18 at 129 (citations omitted).

In the instant case, it does not appear that the prosecution sought to introduce the impeachment evidence as a "mere subterfuge." There seems to be no reason to doubt, on this record, that the prosecutor had every good-faith expectation that he would be able to introduce substantively Cheri's prior written statement, as incorporated in her Article 32 testimony. Nevertheless when, at the close of the prosecution case, trial counsel moved for admission of the prior written statement and the military judge excluded it, the practical effect on the court-martial was much the same. At that point, the *only* function left for Cheri at the court-martial was to serve as a foil for the prosecution's admission of impeachment evidence—evidence not theoretically offered for the truth of the matter asserted.

In our view, this record represents the quintessential example of hearsay evidence that could not reasonably be cured by a limiting instruction. The court members heard Cheri acknowledge on the witness stand that she had made a sworn, written statement to an NIS agent to the effect that she had twice had sex with appellant. They heard her acknowledge that she had previously, under oath, adopted that statement as true at the Article 32 hearing. The members observed trial counsel hand her the written statement at the court-martial and cause her to admit, line by line, that she had made each and every assertion under oath, though she now claimed them to be false. They heard her admit that she had told four different people, her mother and three of her school friends, that she had had sex twice with appellant. Finally, the members heard Mrs. A's testimony describing the content of what Cheri told her about having sex with appellant—and none of these statements were to be remembered by the members when they toted up the evidence *against* appellant!

Even if the military judge's instructions on limited use had been perfect, we do not believe the court members could reasonably have been expected to disregard this information completely for all substantive purposes and to relegate it only to the limited purpose of weighting Cheri's denial that anything happened. (Needless to say, the prejudice equation would have looked quite different if the prior written statement had been substantively received.) As indicated, we have no occasion on this record to opine on the correctness of the military judge's decision to exclude the written statement (though we do not understand his denial of government delay to consider an appeal of the ruling, *see* n. 4, *supra*). Given the judge's rulings, however, it would appear that his only practical option at that point was to declare a mistrial. In any event, his utterly erroneous instruction, which indicated that the members could actually consider the statements to her friends and to her mother "as evidence of the truth of the matter expressed therein" compounded the existence of prejudice beyond all calculation.

The decision of the United States Navy–Marine Corps Court of Military Review is reversed. The findings and sentence are aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.