UNITED STATES

v.

Charles M. TILLER, 367–66–3774, Hospitalman Apprentice (E–2), U.S. Navy.

NMCM 93 00535.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 22 Oct. 1992.

Decided 25 Jan. 1995.

**824**

LT Philip Sundel, JAGC, USNR, Appellate Defense Counsel.

LtCol Frank F. Krider, USMCR, Appellate Government Counsel.

LCDR David B. Auclair, JAGC, USN, Appellate Government Counsel.

Before LARSON, C.J., WELCH, Senior Judge, and McLAUGHLIN, J.

McLAUGHLIN, Judge:

The appellant was tried by general court-martial composed of officer and enlisted members on 15 September 1992 and 20–22 October 1992. Contrary to his pleas, he was convicted of disrespect to a superior petty officer, rape, assault consummated by a battery, and disorderly conduct, in violation of Articles 91, 120, 128, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 891, 920, 928, 934. The adjudged sentence was confinement for 8 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The appellant has assigned four errors in his brief.[1] Because of our action regarding Assignment of Error I, we need not address the remaining assignments of error. Our focus is the military judge's suppression of evidence of the alleged victim's [V] participation in consensual sexual intercourse with a man other than the appellant approximately one-half hour before the charged rape *that she does not remember, at all,* and how this evidence could impact on the fact-finders' consideration of V's mental condition, memory, and accuracy as an historian of the charged rape.

The appellant claims that the military judge committed constitutional and evidentiary error in suppressing evidence of prior sexual acts of V under Mil.R.Evid. 412, the so-called rape-shield rule. All procedural requirements of Mil.R.Evid. 412 were complied with by the defense. At an Article 39(a), UCMJ, hearing, the defense claimed that an act of fellatio on a man who was not the appellant, performed by V approximately 6 hours before the charged rape, and an act of consensual intercourse with a different man, also not the appellant, approximately 30 minutes before the charged rape, were admissible under Mil.R.Evid. 412(b)(1) and (b)(2)(A).

---

1. I. APPELLANT WAS DENIED HIS FIFTH AMENDMENT RIGHT TO CALL WITNESSES IN HIS OWN BEHALF, AND HIS SIXTH AMENDMENT RIGHT TO CROSS-EXAMINE THE WITNESSES AGAINST HIM, WHEN THE MILITARY JUDGE SUPPRESSED EVIDENCE OF THE ALLEGED VICTIM'S PRIOR SEXUAL ACTS WITH TWO OTHER SERVICEMEMBERS WITHIN APPROXIMATELY TWELVE HOURS OF THE ALLEGED RAPE.

II. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF RAPE BEYOND A REASONABLE DOUBT.

III. THE MILITARY JUDGE ERRED WHEN HE INSTRUCTED THE MEMBERS THAT THEY COULD FIND APPELLANT GUILTY OF RAPE IF THEY BELIEVED THAT THE ALLEGED VICTIM WAS INCOHERENT AT THE TIME OF INTERCOURSE, WHERE THERE WAS NO EVIDENCE OF RECORD TO SUPPORT AN INFERENCE THAT THE ALLEGED VICTIM WAS UNCONSCIOUS OR INCOHERENT AT ANY TIME DURING THE ALLEGED RAPE. (Footnote omitted.)

IV. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S PRETRIAL MOTION TO SEVER THE RAPE CHARGE FROM THE OTHER OFFENSES WITH WHICH HE WAS CHARGED, AND THE FINDINGS ON THE OTHER CHARGES ARE RENDERED UNRELIABLE DUE TO THE SPILLOVER EFFECT OF THE EVIDENCE ON THE RAPE CHARGE. (Footnote omitted.)

We hold that the military judge erred in suppressing the presentation of evidence of V's sexual intercourse with the Petty Officer of the Watch [H], approximately 30 minutes before the charged rape.

### HEARING UNDER MIL.R.EVID. 412(c)(2)

The following summary of evidence is taken exclusively, except where noted, from the Article 39(a), UCMJ, hearing on the admissibility of V's past sexual behavior.

The appellant was stationed at the Naval Hospital Orlando in Florida and was living in the barracks at the Naval Training Center Orlando. V was a civilian who lived in the vicinity of the hospital.

On the afternoon of 22 June 1991, the day before the events that led to the rape charge, V and a Sailor, F, who also lived in the same barracks as the appellant, travelled from Orlando to Daytona Beach, Florida. V's sister accompanied them. F drove, although it was V's car. The record is clear that on this daytrip, V became extremely intoxicated. When F returned to the barracks at approximately 2130 with V, she was still extremely intoxicated. Record at 121. For her safety, F arranged with the Petty Officer of the Watch in the barracks, H, to have her sleep in the barracks lounge until sober.

According to F, V and he had kissed and hugged as he drove back to Orlando, and she performed fellatio on him. F left V "going to sleep" in the lounge at approximately 2200. Record at 113, 121.

According to H, after V was awakened by late-night revelers returning from liberty, he took her to his barracks room, on the second deck of the barracks, at approximately 0330 or 0430 on 23 June 1992. H and V then engaged in heavy petting that led to consensual sexual intercourse.[2] H left her sleeping in his room at approximately 0345 or 0445 and checked on her twice thereafter, the last time at approximately 0500. Record at 126. H next saw her at 0530, in the courtyard of the barracks. She demanded her car keys, he gave them to her, and she reported to H that some guy had tried to pull her into his room. Record at 127–28. While H was inquiring into this report, the appellant was leaving his room and V identified him as the "guy." Upon H's inquiry, the appellant denied having V in his room, but did say that he had asked her in.[3] Record at 128–29.

V testified that, due to intoxication, she experienced amnesia regarding what occurred from about the time she left the Daytona Beach area to the time she awakened in the barracks on 23 June 1991 at approximately 0430. She did not remember, and denied, performing fellatio on F. She said the charged rape occurred in the same barracks on the same deck where she slept, but in the appellant's room. She had fallen asleep in the barracks lounge. She adamantly maintained that she did not awaken in H's room.[4] She was on the first deck at all times. She testified that she has no memory of going to H's second-deck barracks room and having consensual sexual intercourse with H. She was departing the barracks, with a bad headache but not intoxicated,[5]

---

2. H confessed to this violation of barracks regulations to the Naval Criminal Investigative Service [NCIS] and was given nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815.

3. During the trial, the appellant testified that he lied about the sexual intercourse because having a female in the barracks room at that hour of day was a violation of regulations.

4. She testified that she was awakened by her car keys punching her side (shortly before launching a search for her car keys) in "the medical barracks security office I believe." Record at 138. Later, before the members, she said she awakened in the lounge. Record at 309.

5. Defense Exhibit D, V's sworn statement to NCIS, was admitted to impeach her statement of sobriety. Mil.R.Evid. 613. In that prior sworn statement she said that when the appellant grabbed her arm she, "was still very intoxicated, and my head was spinning...." Defense Ex. D at 2.

The defense counsel first offered this prior inconsistent statement as substantive evidence under Mil.R.Evid. 801(d)(1) as a prior sworn statement but failed to inform the military judge that it had been adopted as *sworn testimony* at an Art. 32, UCMJ, pretrial investigation. That factor might have made it admissible as non-hearsay under Mil.R.Evid. 801(d)(1)(A). *United States v. Gibson*, 39 M.J. 319, 323 n. 4 (C.M.A. 1994).

The defense argued that any sworn statement to NCIS is not hearsay under Mil.R.Evid. 801(d)(1). The defense offer was rejected upon

when two men, one of whom was the appellant, passed her in the opposite direction. She didn't know what time it was because her watch was missing. Quickly thereafter, according to her, she was grabbed from behind by the appellant and taken into a barracks room where, contrary to her vocal and physical resistance, the appellant engaged in sexual intercourse with her.

According to the appellant, as he was returning to the barracks at approximately 1700 on 22 June 1991, he saw V with F at the barracks and she appeared very intoxicated. He next saw her when he and a friend were returning from liberty at approximately 0500 on 23 June 1991. V asked the appellant if he had seen her car keys and he said they were probably where she had last been. After talking to his liberty companion, who then went up to his own room, the appellant started for his room. According to the appellant, V was walking behind him and, after he opened his door, she entered his room—uninvited. They then talked, sat on the bed, started rubbing on each other, and then: "It happened." Record at 166. "It" was clarified as consensual sexual intercourse.

The military judge ruled that the prior sexual behavior of V, with both F and later with H, was not constitutionally required to be admitted. Record at 195.

## LAW

The Court of Appeals for the Armed Forces has recently reviewed the boundaries and development of the law involving Mil. R.Evid. 412. *United States v. Knox*, 41 M.J. 28 (C.M.A.1994); *United States v. Greaves*, 40 M.J. 432 (C.M.A.1994). It is judicially recognized that Mil.R.Evid 412 "is primarily a rule of relevance." *United States v. Fox*, 24 M.J. 110, 112 (C.M.A.1987).

■ The portion of Mil.R.Evid. 412 pertinent to our resolution of the issues presented prohibits admission "in a case in which a person is accused of a nonconsensual sexual offense, [of] evidence of a victim's past sexual behavior . . ." unless such evidence is "consti-

tutionally required to be admitted." Mil. R.Evid. 412(b)(1). Evidence of prior sexual behavior is constitutionally required under Mil.R.Evid. 412 if relevant, material, and favorable to the defense. Additionally, " 'the probative value of' the evidence must outweigh 'the danger of unfair prejudice.' " *Greaves*, 40 M.J. at 438 (quoting *Fox*, 24 M.J. at 112 and Mil.R.Evid. 412(c)(3)); *see also Knox*, 41 M.J. at 30; *United States v. Saunders*, 736 F.Supp. 698, 703 (E.D.Va.1990) (citing *United States v. Dorsey*, 16 M.J. 1, 5 (C.M.A.1983)), *aff'd*, 943 F.2d 388 (4th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

■ We find that the evidence of the consensual sexual intercourse with H, *which V did not remember*, was constitutionally required to be admitted. Mil.R.Evid. 412(b)(1).

Although the military judge exhorted trial defense counsel to fully exploit V's lack of memory of events from the late afternoon of 21 June until her claimed return of memory at approximately 0500 on 22 June, he refused to allow the defense counsel to present evidence that V had had consensual sexual intercourse (not remembered by V) 30 minutes before the charged rape. The trial defense counsel took advantage of what was left and, at the conclusion of the evidence, argued forcefully to the members concerning this memory gap. However, this encounter of sexual intercourse, so totally forgotten by V, yet so proximate in time, space, and nature to the charged offense, dramatically draws into question the mental condition, perceptive abilities, and memory of V—unlike other impeachment evidence available. *United States v. Banker*, 15 M.J. 207 (C.M.A.1983); *United States v. Begay*, 937 F.2d 515, 521 (10th Cir.1991); Mil.R.Evid. 607, 611. The state of her sobriety at the time of the charged rape was always an issue, and we will not speculate how that was resolved by the members. We emphasize that, under the unique circumstances of this case, this evidence of past sexual behavior with H is probative of V's credibility as it relates to her qualities as a percipient witness. It is *not* admissible on

---

the prosecutor's hearsay objection, and the statement was then offered and accepted under Mil. R.Evid. 613 for impeachment purposes only.

The members were instructed as to this limited use.

the traditional, and discredited, philosophy that evidence of consent to another man serves as evidence of consent to the appellant,[6] or to the appellant's mistaken belief of consent; and it is certainly *not* admissible to demonstrate that V is a "loose" woman or was of *poor* moral character.

This evidence, if admitted, would not be unduly prejudicial under Mil.R.Evid. 412(c)(3), or Mil.R.Evid. 403, with a proper limiting instruction to the members. *United States v. Dorsey,* 16 M.J. at 7–8 (holding that proper limiting instruction would protect against unfair prejudice and also questioning use of a balancing test if the evidence is determined to be constitutionally required).

 Notwithstanding *Dorsey,* this does not end our inquiry. We need determine whether the erroneous exclusion of this evidence was prejudicial. *United States v. Colon–Angueira,* 16 M.J. 20, 27–28 (C.M.A. 1983) (citing Art. 59(a), UCMJ). By its very definition under Mil.R.Evid. 412(b)(1), this is error of a constitutional nature. An error of constitutional dimension, excluding defense-proffered evidence, requires reversal if there is a reasonable likelihood that the excluded evidence could have affected the judgment of the trier of fact. *United States v. Williams,* 37 M.J. 352, 360 (C.M.A.1993); *Colon–Angueira,* 16 M.J. at 28. In as much as the military judge did not have the opportunity to consider all the evidence of record before ruling on the motion, additional inquiry on our part, i.e., reviewing the entire record of trial, is required before the conviction can be reversed. *Id.* We have examined the record of trial and, rather than being faced with a case in which the suppressed evidence of V's prior sexual intercourse with H is "possibly useful to the defense but not likely to have changed the verdict," we find that the record strengthens the rationale by which this evidence is constitutionally required. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), *quoted in Colon–Angueira,* 16 M.J. at 28. The record reveals that V admitted to the Naval Criminal Investigative Service that she was intoxicated and her head was spinning at the time of the charged rape. Defense Ex. D. V had

a history of severe memory loss due to alcohol impairment. Record at 355. We cannot say that the case against appellant could have withstood introduction of the excluded evidence.

Accordingly, the findings to Charge I and its sole supporting specification alleging rape are set aside. The remaining charges and specifications, as approved on review below, are affirmed. The sentence is set aside. The record shall be returned to the Judge Advocate General. A rehearing on Charge I may be ordered. A rehearing on sentence is ordered.

Chief Judge LARSON and Senior Judge WELCH concur.

---

**6.** Except as it might bear on evidence of an     unremembered consent.