# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**NATHAN A. BUTTERS**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201300291**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 22 March 2013.
**Military Judge**: Maj Nicholas Martz, USMC.
**Convening Authority**: Commanding General, 2d Marine Aircraft Wing, Cherry Point, NC.
**Staff Judge Advocate's Recommendation**: LtCol J.J. Murphy, III, USMC.
**For Appellant**: William E. Cassara, Esq.; CAPT Tierney Carlos, JAGC, USN.
**For Appellee**: LCDR Keith Lofland, JAGC, USN.

**30 September 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE.**

MCFARLANE, Senior Judge:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of two specifications of making a false official statement and one specification of aggravated sexual contact, in violation of Articles 107 and 120, Uniform Code of Military Justice, 10

U.S.C. §§ 907 and 920. The members sentenced the appellant to a period of confinement for one year and reduction to pay grade E-1. The convening authority (CA) approved the sentence as adjudged.

On appeal, the appellant raises twelve assignments of error (AOE).[1] We address six (AOEs II, III, IV, V, VI and IX), and summarily find the remaining assignments of error to be without merit.

After carefully considering the record of trial, the submissions of the parties, and oral argument, we are convinced that the findings and the sentence are correct in law and fact,

---

[1] I. That the guilty finding for aggravated sexual contact is not factually sufficient;

II. That the military judge improperly denied compulsory production of a defense witness;

III. That the military judge erred by denying the defense challenge for cause against Master Sergeant H;

IV. That the military judge erred in denying the defense request to dismiss the panel;

V. That the military judge improperly admitted hearsay evidence over the defense objection as excited utterances;

VI. That the military judge improperly allowed trial counsel to test the basis of Staff Sergeant B's opinion of the appellant's character for truthfulness;

VII. That the appellant's trial was tainted by apparent unlawful command influence when the military judge improperly admitted irrelevant evidence that "something is going to happen" because the two commanding officers at Cherry Point do not take these sorts of allegations "lightly";

VIII. That the military judge improperly admitted a conversation between the victim, Cpl MP and the victim advocate;

IX. That the military judge improperly excluded the videotape interview of Cpl MP, which included a prior inconsistent statement;

X. That the military judge improperly admitted hearsay statements made by Cpl MP to Special Agent T;

XI. That the CA's post-trial actions established that he could not be fair and impartial during his clemency review; and

XII. That the guilty finding for false official statement under the additional charge is not factually sufficient.

and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Factual Background

On the evening of 8 September 2012, the appellant and Corporal (Cpl) MP separately attended the same party at a barracks onboard Marine Corps Air Station, Cherry Point, North Carolina.  Cpl MP had not met the appellant prior to that evening, but she jokingly took his hat off at the party when she told him to change the music that was playing.  Cpl MP left the party with her friend around 0500 on 9 September 2012.  She separated from her friend outside of his barracks.

As Cpl MP got to the midsection of her barracks building, the appellant grabbed Cpl MP's left hip, pulled her away from the door, and told her that he wanted to get to know her better.  Cpl MP told the appellant that she was tired and that she just wanted to go to bed.  The appellant and Cpl MP walked together for a short period, after which the appellant forced Cpl MP against a wall and touched and kissed her without her consent.  The appellant sucked on Cpl MP's neck with enough force to leave a hickey, pushed his hand underneath her shirt and bra, and felt her breast.  Cpl MP struggled against the appellant's advances, managed to push him off, and walked away.  The appellant chased after Cpl MP, grabbed her wrist, and tried to pin her against the door to a maintenance room on the lower level of the barracks.  Cpl MP escaped the appellant a second time and made her way to her room.  A short time later, she ran to the duty hut to report the incident.

During her initial Naval Criminal Investigative Service (NCIS) interview, which occurred later that same morning, Cpl MP described her assailant as a black male, about five feet, ten inches in height, about 160 pounds with a prominent jaw, thin eyebrows, and a mustache, and indicated that he was wearing a purple hat.  She did not however, tell NCIS that her assailant had been at the party she was attending immediately before the attack.  Rather, she said that she had not seen him before, that she could not assist them with the creation of a sketch, and that she did not think she could identify the assailant's hat.

3

The next day, after getting some sleep, Cpl MP recalled that the appellant had been wearing a hat similar to her assailant's. She then called a friend to learn the appellant's name, which she in turn provided to NCIS. Based on this report, NCIS collected a DNA sample from the appellant and conducted forensic testing of Cpl MP's clothing. Those tests found the appellant's DNA inside the cup of the Cpl MP's bra, at roughly five times the rate her DNA was found.

Further facts relevant to the assignments of error are developed below.

## Denial of Production of a Defense Witness

The appellant argues that the military judge erred in denying production of a defense witness. We disagree.

Trial defense counsel made a pretrial motion to compel production of witnesses, including Sergeant (Sgt) DF. Defense counsel proffered that Sgt DF would testify that, contrary to Cpl MP's claim that she had never seen the appellant before, she and the appellant had been "in close proximity two times before the day of the attack[,]" once at a prior barbeque, and once when he and several other Marines rode back to the base in the bed of her pickup truck. Record at 13-14. Trial counsel argued that Sgt DF's testimony would not be material or relevant, because in his sworn statement to NCIS, he stated that he could not testify that the appellant and Cpl MP ever interacted. Defense counsel then admitted that Sgt DF "has no remembrance of them interacting." *Id.* at 19. The military judge subsequently denied the production of Sgt DF, finding that the defense did not prove by a preponderance of the evidence that the witness was relevant or necessary.

We review a military judge's ruling on a request for a witness for an abuse of discretion. *United States v. McElhaney*, 54 M.J. 120, 126 (C.A.A.F. 2000). An appellate court will not set aside a military judge's denial of a witness unless it has a "definite and firm conviction" that the military judge committed "a clear error of judgment[.]" *Id.* at 126 (citation and internal quotation marks omitted).

4

Article 46 of the UCMJ states, "[t]he trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." The President has set forth the prescribed regulations for the production of witnesses and evidence in RULE FOR COURTS-MARTIAL 703, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Pursuant to R.C.M. 703(b)(1), "[e]ach party is entitled to the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be relevant and necessary." A witness provides relevant testimony when there is "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MILITARY RULE OF EVIDENCE 401, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

In this case, the defense sought to present Sgt DF's testimony in order to argue that in the "normal course of social interactions the members would be able to infer that there should have been some interaction between [the appellant and Cpl MP], and that she had been in his presence before where she should have recognized him . . . ." Record at 20. We find the link between what Sgt DF could testify to, and what the defense wanted to argue therefrom, tenuous at best. Accordingly, we do not find that the military judge abused his discretion by denying the witness.

### Challenge for Cause Against Master Sergeant (MSgt) AH

The appellant argues that the military judge erred by denying the defense's challenge for cause against MSgt AH. We disagree.

During the *voir dire* process, the military judge employed a liberal grant mandate for ruling on defense challenges for cause. As a result, the military judge granted all but two of the appellant's eight challenges for cause. The appellant exercised his peremptory challenge against one of the two members, and the other one sat on the panel – MSgt AH. Defense counsel had challenged MSgt AH for having actual bias due to his having been the victim in a previous shooting, and because his older brother was previously hospitalized due to an assault. Trial counsel noted a lack of similarity between the MSgt's

5

experience and the charges pending trial.  The military judge denied the defense's challenge, finding that MSgt's experiences "would not influence his role here as an impartial fact finder." Record at 250.

We review a military judge's ruling on a challenge for cause based on actual bias for an abuse of discretion.  *United States v. Leonard*, 63 M.J. 398, 402 (C.A.A.F. 2006) (citing *United States v. James*, 61 M.J. 132, 183 (C.A.A.F. 2005)).  The Court of Appeals for the Armed Forces "has repeatedly emphasized the need for a military judge to follow a 'liberal grant' mandate in ruling on challenge for cause."  *Leonard*, 63 M.J. at 402 (footnote omitted).  A military judge's rulings based on actual bias "are afforded a high degree of deference . . . By contrast, issues of implied bias are reviewed under a standard less deferential than abuse of discretion but more deferential than *de novo*."  *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002) (citations omitted).  "Implied bias is reviewed under an objective standard, through the 'eyes of the public' and 'focusing on the appearance of fairness.'"  *Leonard,* 63 M.J. at 403 (citing *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F.  1996) and *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)).

Applying these principles to the challenge of MSgt AH, we find that the military judge did not abuse his discretion by denying the challenge.  We note that the military judge applied the liberal grant mandate when evaluating the challenges for cause.  When MSgt AH was challenged, the military judge made findings of fact after hearing both trial counsel and defense counsel's arguments, and found that while MSgt AH was a prior victim of a random shooting, it would not affect his ability to act as an impartial fact finder. We agree.  The facts of a random shooting greatly differ from the facts in the appellant's case.  Further, MSgt AH stated during *voir dire* that he would be able to apply the military judge's instructions fairly and impartially.  The military judge also applied the proper test for implied bias, and properly found it did not apply.  We therefore hold that the military judge did not abuse his discretion by denying the challenge for cause.

6

## Member Selection Process

The appellant argues that the military judge erred by denying the trial defense counsel's request to dismiss the panel because members under the rank of E-6 were systematically excluded. We disagree.

The Staff Judge Advocate (SJA), 2d Marine Aircraft Wing (2d MAW), sent the CA a memorandum regarding the selection of members for the appellant's trial. A list of service members nominated by subordinate commands was attached to the SJA's memo, with the potential members' questionnaires, along with alpha rosters for both officers and enlisted service members. The enlisted alpha roster contained only those at the rank of E-6 and above. The SJA's memo advised the CA to select members based on the criteria in Article 25 of the UCMJ. The memo further provided, "[y]ou are in no way bound by or limited to the names contained" in the list of nominated members, and that "an alpha roster of officers and *senior* enlisted personnel" are enclosed "to assist in your selection." Appellate Exhibit XLII (emphasis added). The CA ultimately chose eight officers and eight enlisted members from the list of nominated members. He did not use the alpha rosters provided by the SJA.

Prior to trial, the appellant challenged the court-martial member selection process, citing the seniority of the panel. In response, trial counsel argued that the alpha roster contained only senior enlisted service members for "administrative ease," as there are thousands of Marines at the E-5 and E-4 level. Record at 166. The military judge denied the defense motion on the basis that the defense did not submit evidence that the CA stacked or improperly selected the panel, finding that the "defense has provided *no* other evidence other than the composition of the panel . . . ." *Id.* at 167 (emphasis added).

Whether a panel is properly selected is a matter of law that this court reviews *de novo*. *United States v. Gooch*, 69 M.J. 353, 358 (C.A.A.F. 2011) (citing *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004)). We are bound by the findings of the military judge unless they are clearly erroneous. *United States v. Benedict*, 55 M.J. 451, 454 (C.A.A.F. 2001).

A defendant has both a constitutional and regulatory right to a fair and impartial panel. *Gooch*, 69 M.J. at 357. "These rights are upheld through application of selection criteria contained in Article 25, UCMJ." *Id.* Article 25 requires that the CA must select members who, in the CA's opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. Art. 25(d)(2), UCMJ. The CA must personally select the court-martial members. *See United States v. Allen*, 18 C.M.R. 250, 263 (C.M.A. 1955). Subordinates do, however, routinely assist the CA by nominating potential court members. *See Benedict*, 55 M.J. at 455.

The burden is on the defense to show a systematic exclusion of qualified personnel from the selection process. *United States v. Kirkland*, 53 M.J. 22, 24 (C.A.A.F. 2000) (citing *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999)). Once the defense meets their burden of production, "the Government must show by competent evidence that no impropriety occurred when selecting appellant's court-martial members." *Id.* (citation omitted). Applying these principles, we conclude that the appellant has not met his burden of production.

In this case, there has been no showing that subordinate commands systematically excluded those in ranks under E-6. Moreover, the SJA's act of supplying the CA with an alpha roster composed entirely of senior enlisted personnel, while perhaps not a best practice, does not systematically exclude certain ranks, but rather suggests to the CA that he start his consideration by first looking at the senior grades. This is further evidenced by the SJA's instruction to the CA that he can look beyond the roster if he was so inclined. Given that our superior court has held that "it is permissible to look first at the senior grades for qualified court members," we find that the appellant has not presented sufficient facts to show systematic exclusion of qualified personnel. *United States v. White*, 48 M.J. 251, 254 (C.A.A.F. 1998).

Lastly, we note that the CA personally selected all of the members based on the proper statutory criteria, and that the court was properly convened. Moreover, there is nothing in the record to suggest that the members who sat on the appellant's

8

court-martial were anything but fair and impartial.  To the contrary, the members were the product of a rigorous *voir dire* process wherein the military judge granted six of eight defense challenges for cause.[2]  On these facts, "we are confident that there was no material prejudice to the appellant's substantial rights" and that the appellant "received the statutorily qualified, fair, and impartial panel to which he was entitled." *United States v. Dowty*, 57 M.J. 707, 715 (N.M.Ct.Crim.App. 2002), *aff'd*, 60 M.J. 163 (C.A.A.F. 2004).

### Admission of Hearsay Evidence as an Excited Utterance

The appellant contends that the military judge erred in admitting Cpl MP's statements to Lance Corporal (LCpl) BC as excited utterances.  Appellant's Brief of 29 Jan 2014 at 56.  We disagree.

LCpl BC was on duty in Cpl MP's barracks on the morning of 9 September 2012 when Cpl MP entered the duty hut.  He testified at trial that Cpl MP "seemed like something had freaked her out," and sat down, hugging her knees to her chest.  Record at 268-69.  Trial counsel asked LCpl BC what Cpl MP told him, and after a defense objection for hearsay, proffered that the evidence was being offered for its effect on the listener and as an excited utterance.  *Id.* at 270.  The military judge ruled, over a defense objection, that the witness could answer.[3]  LCpl BC proceeded to testify:

> She just stormed in and just started shaking . . . she just came in like she was scared to death, and I couldn't get much out of her at all.  She's really talkative, and she wasn't talking at all.
>
> . . . .
>
> It took her about five to ten minutes to actually say there's, like, a guy.  I was like, "What are you talking about?  What kind of guy?"  And after questioning and questioning her and seeing what

---

[2]  Of the two challenges for cause that were not granted, one member was struck after a peremptory challenge, and the other was MSgt AH.

[3] The military judge did not, however, specify on which grounds the witness could answer.

happened, she finally gave me more information as I kept asking questions.

. . . .

I just asked her where she was, what did she do that night.  She said there was a guy she met at the party. She was hanging out at a barracks party . . .

After questioning her for maybe 15 to 20 minutes, I, like, started to open the door and said I was going to go see if there was that guy out there.  She was like, "No.  No.  No.  Don't leave me.  Don't leave me."

*Id.*

We review a military judge's ruling in admitting or excluding evidence for an abuse of discretion.  *United States v. Feltham*, 58 M.J. 470, 474 (C.A.A.F. 2003).  "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MIL. R. EVID. 801(c).  MIL. R. EVID. 802 prohibits hearsay, however, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible as an "excited utterance."  MIL. R. EVID. 803(2).

In order to determine whether a hearsay statement qualifies as an excited utterance, we apply a three-prong test: "(1) the statement must be spontaneous, excited, or impulsive rather than the product of reflection and deliberation; (2) the event prompting the utterance must be startling, and; (3) the declarant must be under the stress of excitement caused by the event."  *Feltham*, 58 M.J. at 474 (citing *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987)) (additional citation omitted).

Given the fact that the military judge did not issue a limiting instruction precluding the use of Cpl MP's statements as extrinsic evidence, we find that the evidence was admitted as an excited utterance.  Additionally, we find that the military judge did not abuse his discretion by so admitting those statements.  LCpl BC testified that Cpl MP was shaking and seemed scared to death, the complete opposite of her usual

10

demeanor.  Cpl MP was so upset that she could not explain what was bothering her, and LCpl BC had to continually ask her what was wrong.  When Cpl MP finally calmed down enough to speak, it was a short, incoherent sentence.  Further, when LCpl BC went towards the door in order to check the hallways to see if her attacker was still around, Cpl MP panicked and told him not to leave her alone in the room.  This shows that she was still under the stress and excitement of the event, even twenty minutes later.  *See id.* Accordingly, we find no error in the admission of the statements.

### Admission of Character Evidence

The appellant contends that the military judge erred in allowing trial counsel to test the basis of SSgt KB's opinion of the appellant's character for truthfulness.  Appellant's Brief at 58.  We disagree.

As the appellant objected to this evidence at trial, we review for an abuse of discretion.  *United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010).  Character evidence is generally not admissible in order to prove "action in conformity therewith on a particular occasion.  MIL. R. EVID. 404(a).  The accused may nonetheless present evidence of a pertinent trait of character, and the prosecution may rebut the same.  MIL. R. EVID. 404(a)(1).  In doing so, however, "[i]t is not permissible, in order to test the basis of a witness' character opinion, in effect to ask the witness whether the charge then before the court-martial would affect the witness' opinion." *United States v. Brewer*, 43 M.J. 43, 47 n.2 (C.A.A.F. 1995) (citations omitted).

In their case in chief, the defense called Staff Sergeant (SSgt) KB to testify regarding the appellant's character for truthfulness.  On cross-examination, trial counsel tested the foundations of SSgt KB's opinion.  The questioning went as follows:

Q: Staff Sergeant, do you agree with me that someone who is truthful doesn't tell lies; correct?
A: Yes, sir.

Q. And then someone who has a character for truthfulness would then always be telling the truth;

11

correct?
A: Yes, sir.

Q: So you would expect a Marine with a character for truthfulness to tell the truth to other Marines when asked questions?
A: Yes, sir.

Q: And to law enforcement?
A: Yes, sir.

Q: And to tell the truth to NCIS agents if their asked questions?
A: Yes, sir.

Q: And, are you aware that Lance Corporal Butters was interviewed by --

DC: Objection, improper impeachment.

MJ: Response?

TC: Sir, I'm questioning the foundation of his knowledge of his character truthfulness of the accused.

MJ: What do you believe is improper about it?

DC: The trial counsel is trying to impeach the witness on the charges before us, which there has not been findings of whether the accused is guilty of those charges.

MJ: Objection is over ruled *at this point*.

Questions by the prosecution:

Q: You would expect that Marine to tell the truth to those NCIS agents, right?
A: Yes, sir.

TC: No further questions.

Record at 542-43 (emphasis added).

Although trial defense counsel correctly stated the law on the impropriety of using allegedly false statements that are the subject of charges before the court to impeach a witness regarding truthfulness, at the time of the defense objection the Government had not yet crossed that line. Thus, given the premature nature of the defense objection, the military judge correctly overruled the objection "at this point." *Id.* at 543. Moreover, following the military judge's ruling, the Government did not attempt an improper impeachment. Accordingly, we find no error here.

**Videotape of Prior Inconsistent Statement**

Lastly, the appellant argues that the military judge abused his discretion by not admitting the videotape of Cpl MP's interview with NCIS, because it contained a prior inconsistent statement. Appellant's Brief at 66. We disagree.

We review a military judge's decision regarding whether to admit or exclude evidence for an abuse of discretion. *United States v. Harrow*, 65 M.J. 190, 199 (C.A.A.F. 2007). "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same . . . ." MIL. R. EVID. 613(b). Further, "[i]f the inconsistency is admitted, extrinsic evidence is generally not admissible." *Harrow*, 65 M.J. at 199 (citing *United States v. Gibson*, 39 M.J. 319, 324 (C.M.A. 1994)).

Here, Cpl MP testified on direct examination that she met with Special Agent (SA) DT on 9 September 2012. On cross-examination, defense counsel asked her to clarify what she told SA DT in that initial meeting, specifically asking her whether she said that she had never seen the appellant before. Cpl MP acknowledged that was indeed what she initially said to SA DT. She further explained, "I said I've never seen him before; not before that night. . . . Before the barbeque, I had never seen him before that night." Record at 459-60. Defense counsel asked several follow-up questions that clearly elicited what Cpl MP initially told SA DT:

Q: But when Special Agent [DT] asked you that question he said, "Had you ever seen this person

13

before?" And you said no, correct?
A: Correct.

Q: You didn't say that you had seen him at the
barbeque, correct?
A: I did not.

Q. You didn't say that you had seen him over the
course of a ten-hour period just before the incident,
right?
A: Correct.

*Id.*

After this exchange, trial defense counsel sought to introduce the videotape of Cpl MP's initial meeting with SA DT as extrinsic evidence of a prior inconsistent statement. After viewing the videotape during a recess, the military judge ruled that Cpl MP's testimony on cross-examination fully admitted that she had made an inconsistent statement, and that any extrinsic evidence to prove the inconsistency was inadmissible. We agree. Trial Defense Counsel completed the impeachment of Cpl MP with those questions, and the military judge was within his discretion when he did not permit the extrinsic evidence of the videotape into evidence.

## Remaining Assignments of Error

After reviewing the record of trial and the pleadings of the parties, we conclude that the remaining assignments of error raised by the appellant do not merit either relief or further analysis. *United States v. Matias,* 25 M.J. 356, 363 (C.M.A. 1987).

## Conclusion

The findings and the sentence as approved by the convening authority are affirmed.

For the Court



R.H. TROIDL
Clerk of Court

14